# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2642WM

_____

| | | |
|---|---|---|
| Elvira Umali Gumangan, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Western District |
| | * | of Missouri. |
| United States of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: March 26, 2001

Filed: June 19, 2001

_____

Before RICHARD S. ARNOLD, FAGG, and BOWMAN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Elvira Gumangan appeals from the District Court's[1] order denying her motion for habeas relief, in which she claimed that her conviction, entered upon a guilty plea for conspiring to commit bank fraud, was the result of ineffective assistance of counsel. We affirm.

---

[1]The Hon. Howard Sachs, United States District Judge for the Western District of Missouri.

Ms. Gumangan was born in the Phillippines and came to the United States in 1988 at the age of 14 with her parents. In December 1995, she was employed as a payroll clerk at a company from which she stole 22 blank checks. She made 21 of these checks payable to her boyfriend, Aaron Rule, with whom she lived, or to one of three of Mr. Rule's relatives, and signed the checks as the authorized signer. From December 12, 1995, to March 14, 1996, these individuals cashed the fraudulent checks for a total amount of approximately $23,000. This money was given to Mr. Rule, who paid $200 to the individual cashing a check. Mr. Rule gave Ms. Gumangan approximately $500 for her part in the scheme. Two of the checks were cashed without Mr. Rule's involvement. Ms. Gumangan shared in the proceeds from one of them. She made the remaining check payable to herself for approximately $1,300, cashed it, and kept the proceeds.

The theft of the checks was discovered, and on March 29, 1997, Ms. Gumangan gave a statement to federal agents admitting her criminal activity. She stated that Mr. Rule asked her to steal the first check, and after it was negotiated he asked her to steal more checks. She told him she did not want to, and he told her that if she did not, he would tell her boss that she was stealing checks and would do damage to her and her car. She stated that she agreed to steal more checks for Rule because she was afraid of his threats. This statement was included in the government's investigative report. On May 14, 1997, Ms. Gumangan. Mr. Rule, and the three other individuals who were involved were charged with conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344(2) and 371.

On that same day, Ms. Gumangan and Mr. Rule and one of the other conspirators appeared, with the same retained counsel representing them all, before a magistrate judge. Counsel stated that he had discussed joint representation with his

clients, and that he perceived no conflict of interest in representing all three. The magistrate judge informed each defendant personally that he or she had the right to be represented by a separate attorney, and that one would be appointed if he or she were unable to afford a private attorney. The magistrate judge alerted defendants to some of the possible conflicts that could arise from joint representation. Each defendant orally waived the right to separate counsel and signed a waiver agreeing to the joint representation. Defendants then each pleaded guilty.

According to the Presentence Report (PSR), Ms. Gumangan's offense level of 8 (which included a two-point reduction for acceptance of responsibility), and criminal history category of I, yielded a sentencing range of 0 to 6 months or 6 to12 months depending upon whether an enhancement for more than minimal planning was to be applied. The PSR noted Ms. Gumangan's alien status and that an agent of the Immigration and Naturalization Service indicated that deportation proceedings might be initiated against her as a result of the instant offense. At sentencing, Ms. Gumangan stated that she had read the PSR. She and her attorney told the Court that her main concern was to avoid prison so she could care for her newborn son. The Court sentenced Ms. Gumangan to five years' probation, with six months' home detention. Because this conviction was for fraud exceeding $10,000, Ms. Gumangan became subject to deportation pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(M)(i).

II.

In this post-conviction action, filed under 28 U.S.C. § 2255, Ms. Gumangan alleged that during the time of the commission of the crimes she was in an abusive relationship with Mr. Rule. She alleged that Mr. Rule forced her to steal the first check from her employer by slapping and choking her, and forced her to continue stealing checks by pushing her through a glass shower door and stabbing her with pieces of

glass. She also alleged that she suffered from battered women's syndrome. She claimed that counsel was ineffective for failing to uncover these facts, and to advise her that she had a defense of duress.

Ms. Gumangan also claimed that counsel was ineffective because of a conflict of interest arising from his representing both her and Mr. Rule. This conflict, according to Ms. Gumangan, prevented counsel from seriously considering a duress defense for her because it would have prejudiced Mr. Rule. Lastly, she claimed that her plea was involuntary because counsel did not inform her that she would be subject to mandatory deportation upon pleading guilty. Rather, she alleged, counsel misadvised her that if she pleaded guilty she had a good chance of successfully contesting deportation.

The government submitted the affidavit of Ms. Gumangan's counsel attesting that he discussed the question of deportation with her and told her that she needed to consult with an immigration lawyer about the matter. He attested that he told Ms. Gumangan that an immigration judge might consider her circumstances and allow her to stay, but that he never told her that she could successfully contest deportation proceedings. He also said that he saw no evidence and was never told by anyone that Ms. Gumangan was battered, abused, or acting under duress when she committed the crimes.

### III.

The District Court rejected Ms. Gumangan's argument that counsel should have known of her alleged abuse from reading the government's investigative report. Furthermore, the Court held, a duress defense had little chance of success. The Court noted that Ms. Gumangan stole several checks without Mr. Rule's involvement or knowledge, indicating that her motive was not just fear, but her own benefit. The Court also concluded that even had Ms. Gumangan been advised of a potential duress

-4-

defense, her decision to plead guilty would have likely been the same, as her main concern was to avoid jail time.

The District Court held that Ms. Gumangan's waiver of the right to separate counsel was knowing, voluntary, and intelligent. The Court rejected the argument that her waiver was not voluntary because Mr. Rule was present during the hearing before the magistrate judge.

On the deportation issue, the Court held that even if, as Ms Gumangan alleged, counsel affirmatively misrepresented to her the likelihood of her deportation after conviction, she did not show a reasonable probability that she would not have pleaded guilty had counsel properly informed her of her likely deportation. Furthermore, the record showed that Ms. Gumangan understood that deportation was a possibility. The Court denied the motion, and this appeal followed.

IV.

To prevail on a claim of ineffective assistance of counsel where there has been a guilty plea, petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the claimed error is counsel's failure to notify the petitioner of a potential defense, the inquiry "will largely depend on whether the affirmative defense likely would have succeeded at trial." Id.

We agree with the District Court that counsel was not ineffective for failing to advise Ms. Gumangan that she had a viable defense based on duress or coercion and battered women's syndrome. We feel confident that such a defense was not likely to succeed had Ms. Gumangan gone to trial. "In order to successfully raise the defense

of duress a defendant in a criminal case must show a reasonable fear of death or serious bodily injury and the absence of a reasonable opportunity to escape or avoid the threatened danger." United States v. Saettele, 585 F.2d 307, 309 (8th Cir. 1978), cert. denied, 440 U.S. 910 (1979). "Coercion which will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or physical bodily injury if the act is not done." Id. n.2 (quoted case omitted); see also United States v. Simpson, 979 F.2d 1282, 1285 (8th Cir. 1992) (court allowed defendant convicted of aiding and abetting armed bank robbery broad latitude to introduce defense based on coercion and battered women's syndrome; jury had substantial evidence to conclude that defendant had a reasonable opportunity to escape and was not coerced), cert. denied, 507 U.S. 943 (1993).

As the District Court noted, the fact that Ms. Gumangan forged and negotiated three checks without Mr. Rule's involvement or knowledge militates strongly in favor of concluding that a duress defense was not likely to succeed.

A criminal defendant's right to effective assistance of counsel includes the right to be represented by counsel free of conflict. United States v. Haren, 952 F.2d 190, 195 (8th Cir. 1991). A defendant, however, may waive her right "to the assistance of an attorney unhindered by a conflict of interests." United States v. Brekke, 152 F.3d 1042, 1045 (8th Cir. 1998) (quoted case omitted). Where one attorney jointly represents more than one defendant, Federal Rule of Criminal Procedure 44(c) requires the District Court to inquire into the representation and personally advise each defendant of his or her right to separate counsel. We review a District Court's determinations concerning conflicts of interest for abuse of discretion. Id. Here we conclude that the magistrate judge properly followed the dictates of Rule 44(c), and we find no abuse of discretion in the finding that Ms. Gumangan's waiver of her right to separate counsel was knowing, voluntary and intelligent. Petitioner pleaded guilty only

after being specifically advised that joint representation would make it difficult for her to mount any sort of defense seeking to place the blame on Mr. Rule.

The last issue on appeal concerns Ms. Gumangan's counsel's advice to her regarding her deportability. Several circuits have held that failure to advise a defendant of the prospect of deportation does not constitute ineffective assistance of counsel. See, e.g., United States v. Banda, 1 F.3d 354, 355 (5th Cir. 1993); United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988). Here, even if counsel mistakenly told Ms. Gumangan that she might successfully contest deportation, we perceive no prejudice in her pleading guilty instead of going to trial. The evidence of Ms. Gumangan's guilt was overwhelming, and we have already held that a duress defense would not have succeeded. Ms. Gumangan would have faced deportation upon conviction by a jury, just as she does now.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.