RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0329p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DEBRA DANDO,

　　　　　　　*Petitioner-Appellant,*

　　　*v.*

JOAN YUKINS, Warden,

　　　　　　　*Respondent-Appellee.*

No. 04-1691

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-72876—Nancy G. Edmunds, District Judge.

Argued: April 28, 2006

Decided and Filed: August 30, 2006

Before: MARTIN, GUY, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Carol Wright, Columbus, Ohio, for Appellant. Janet A. VanCleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Carol Wright, Columbus, Ohio, for Appellant. William C. Campbell, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

　　　MARTIN, J., delivered the opinion of the court, in which CLAY, J., joined. GUY, J. (pp. 10-12), delivered a separate dissenting opinion.

_____

**OPINION**

_____

　　　BOYCE F. MARTIN, JR., Circuit Judge. Debra Dando appeals the district court's denial of her habeas corpus petition. Dando had been involved in a crime spree with her boyfriend, and pled no contest to several counts of robbery and related charges. Dando later sought unsuccessfully to vacate her plea. Her habeas petition challenged the Michigan state courts' denial of her request for a mental health expert and her claim of ineffective assistance of counsel. For the following reasons, we reverse the district court's denial of her habeas petition.

1

I.

The district court found the following uncontested facts regarding the crimes to which Dando pled no contest:

On January 28, 2000, Petitioner Debra Dando and her boyfriend Brian Doyle committed a string of armed robberies and assaults in Oakland County, Michigan. At approximately, 6:10 a.m., Petitioner requested a ride from George Cubitt in White Lake Township. Mr. Cubitt drove Petitioner to the Kroger store in White Lake as she requested. Doyle followed Mr. Cubitt and Petitioner in his pickup truck. When Mr. Cubitt stopped at the Kroger store, Doyle confronted him with a sawed off shotgun. Mr. Cubitt was robbed of his wallet and car keys and Petitioner and Doyle fled in Doyle's truck.

At approximately 6:46 a.m., Petitioner attempted to use two of Mr. Cubitt's stolen credit cards at an Amoco Gas Station in Waterford Township to purchase gasoline. Both of the credit cards were rejected by the Amoco station and Petitioner and Doyle fled the gas station in their truck with [out] paying for $ 32.00 in gasoline.

At approximately 7:15 a.m., Doyle attempted the armed robbery of Cheryl Gibbons at the Mobil gas station in Pontiac. Petitioner and Doyle were inside their truck at the gas station parking lot. Ms. Gibbons, a customer of the gas station, had re-entered her motor vehicle when Doyle approached her and put the sawed off shotgun to her cheek. Doyle told Ms. Gibbons to move over inside of her car, but Ms. Gibbons refused to comply and exited her vehicle. Doyle yelled at Ms. Gibbons to give him her money. When Ms. Gibbons refused to comply, Doyle ran back to the truck and Petitioner drove away with him from the gas station.

At approximately 9:06 a.m., Scott Cooper was sitting in his motor vehicle at the parking lot the Great Lakes Crossing Shopping Mall in Auburn Hills. Petitioner drove Doyle's truck and parked behind Mr. Cooper's vehicle. Doyle exited the truck and put the sawed-off shotgun to Mr. Cooper's face and robbed him of his wallet and car keys. Doyle re-entered the truck and Petitioner drove away from the crime scene.

At approximately 12:30 p.m., Petitioner and Doyle drove to Shanigan's restaurant in Pontiac. Doyle entered the restaurant and pointed the sawed-off shotgun at a waitress, Jennifer Sanchez, demanding her money. Ms. Sanchez refused to comply with this demand and ran into the kitchen to call the police. Doyle left without obtaining any money and he and Petitioner drove to a nearby party store.

Petitioner was seen walking into a party store where Mitchell Figa was working behind the counter. Petitioner asked Mr. Figa if he was the only person present and then left. Doyle entered the store and committed armed robbery of Mr. Figa with the sawed-off shotgun, obtaining $100.00 from Mr. Figa. Petitioner drove away from the party store.

Several law enforcement agencies became engaged in an attempt to apprehend Petitioner and Doyle. During the late afternoon hours of January 28, 2000, Petitioner and Doyle were spotted in their truck by a Waterford Township police officer. A traffic stop of the truck was attempted and Petitioner exited the truck and began to flee. The officer was subsequently confronted by Doyle who was still in possession of the sawed-off shotgun. Doyle was fatally shot by the officer who was forced to act in self-defense. Petitioner was apprehended in her flight on foot a short while later.

D. Ct. Op. at 2-4.

After Dando was apprehended on January 28, 2000, she waived her *Miranda* rights and confessed to participating in the robberies. She received appointed counsel, who subsequently recommended that she plead no contest to all charges. According to Dando, she informed her attorney that she had a long history of violent sexual and physical abuse and that Doyle beat her and threatened to kill her immediately before she participated in the robberies. She requested that counsel seek a mental health expert before she enter a no contest plea. Counsel allegedly refused to request expert assistance, explaining that an expert would cost too much money. Counsel also allegedly continued to insist that Dando enter a no contest plea. On March 12, 2000, Dando followed her attorney's advice and pled no contest to three counts of armed robbery, one count of conspiracy to commit armed robbery, two counts of assault with intent to rob while armed, and two counts of unlawful possession or use of a financial transaction device. The plea was entered pursuant to a *Cobbs* agreement, whereby the circuit court agreed to sentence Dando at the low end of the state's sentencing guidelines. On April 24, 2000, the circuit court sentenced Dando to ten to thirty years imprisonment, explaining:

> Miss Dando's 30, and certainly by sentencing her at the low end of the guidelines we are recognizing the fact that she was apparently misused by Mr. Doyle, but I've indicated on the record already she had several opportunities to remove herself from that and cease in the agreement to perpetrate these crimes . . .

Sentencing Hr'g Tr. at 13.

On May 22, 2000, Dando obtained new counsel for the appeals process. On January 17, 2001, Dando's appellate counsel moved in the Michigan circuit court for the appointment of an expert on Battered Woman's Syndrome to assist with the appeals process. The motion indicated that Petitioner was considering whether to move to withdraw her plea and enter a duress defense based on Battered Woman's Syndrome. Along with the motion, Dando submitted three affidavits, one from her aunt, Barbara Ditch, one from a friend, Luther Early, and one from herself. The affidavits documented a history of physical and sexual abuse.

The circuit court held a hearing on the motion on January 24, 2001. At the hearing, appellate counsel explained that she needed an expert to assess whether Dando should move to withdraw her no contest plea. The circuit court construed the request as one for an expert to assist with an ineffective assistance of counsel claim, presumably because Dando would need such a claim to withdraw her plea. The circuit court denied this request, holding that Dando had not received ineffective assistance of counsel. The court reasoned that Dando's trial counsel had made a strategic choice to recommend a no contest plea and that this strategic choice was "very appropriate" in light of the lessened sentence.

On March 1, 2001, Dando filed a "delayed application for leave to appeal" and a "motion to remand to permit Petitioner to withdraw her plea" with the Michigan Court of Appeals. In the application for leave to appeal, Dando argued that the trial court abused its discretion in denying her motion for an expert on Battered Woman's Syndrome because counsel needed the assistance of a Battered Woman's Syndrome expert in determining whether she should move to withdraw her plea. The motion expressly stated that Dando's trial counsel was "ineffective for failing to request an expert witness prior to determining how Ms. Dando should proceed." The Michigan Court of Appeals denied both motions, stating that the application for leave to appeal was denied "for lack of merits in the grounds presented." The Michigan Supreme Court subsequently denied leave to appeal.

Dando filed a petition for writ of habeas corpus on July 22, 2002 with the United States District Court for the Eastern District of Michigan, claiming "the trial court abused its discretion when it denied the motion for payment of a Battered Woman's Syndrome expert on appeal." The district court noted that an abuse of discretion claim based on the state's rules of evidence is not a recognized basis for habeas relief, as it only involves a question of state law. D. Ct. Op. at 10. However if the state courts' rulings amounted to "a functional denial of the right to present a meaningful defense," the decision constituted a violation of Dando's Sixth Amendment rights, and presented a ground for federal habeas relief. *Id.* Further, Dando's claim that her trial counsel was ineffective for failing to investigate a duress defense was another cognizable ground for federal habeas relief under *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.*

Ultimately, however, the district court denied the writ, reasoning that duress was not a tenable defense on the facts of Dando's case. *Id.* at 11-17. Consequently, the district court determined that Dando was not prejudiced either by her counsel's failure to pursue a duress defense, or the denial of a mental health expert, and that there was no basis to grant habeas relief on either ground. *Id.* at 17-18. The district court also reasoned that since a duress defense "would have been hopeless," Dando had no legitimate grounds to contest her plea. *Id.* at 20-24. Dando sought to appeal the district court's decision to this Court. Although the district court denied her request for a certificate of appealability, it was subsequently granted by this Court.

## II.

This Court reviews a district court's denial of a writ of habeas corpus de novo. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000). Factual determinations are generally reviewed for clear error, "except where the district court has made factual determinations based on its review of trial transcripts and other court records." *Mackey v. Russell*, 148 Fed. App'x 355, 359 (6th Cir. 2005). In such cases, because no credibility determination or findings of fact are required, factual conclusions are reviewed de novo. *Wolfe,* 232 F.3d at 501.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a writ of habeas corpus may be granted "with respect to any claim that was adjudicated on the merits in State court" if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1). Under the "contrary to" provision, a federal habeas court should grant the writ "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Wolfe*, 232 F.3d at 501 (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). The district court should issue the writ under the "unreasonable application" clause where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Where a state court fails to address federal law, § 2254 does not apply, and the decision is reviewed de novo. *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (finding the § 2254(d) standard inapplicable where state courts did not address federal issue because "[b]y its terms, this provision only applies to claims that were 'adjudicated on the merits in State court proceedings.'").

## III.

The certificate of appealability from this Court defined Dando's claim as presenting two questions: (1) whether the sentencing court abused its discretion in denying Dando's motion for an expert witness, and (2) whether trial counsel was ineffective for failing to pursue a duress defense. Although the certificate of appealability framed the issues involved here as separate questions, they are inherently intertwined with one another. Dando did not seek the help of an expert before entering her no contest plea in state court. Rather, in a collateral state proceeding, she requested an

expert to assist her in determining whether or not she should seek to withdraw her plea. The only relevant federal constitutional hook that would require allowing Dando to withdraw her plea is a claim that her counsel was ineffective in advising her to plead no contest under *Hill v. Lockhart*. 474 U.S. 52, 56 (1985) (stating that when "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."). Thus, her request for a mental health expert to help her decide whether or not to withdraw her plea and her claim of ineffective assistance of counsel are one in the same. As presented in her federal habeas claim now before this Court, the issue can be articulated as follows: was it an unreasonable application of federal law to reject Dando's claim of ineffective assistance of counsel based on her trial counsel's failure to consult an expert and otherwise investigate the validity of a duress defense based on Battered Woman's Syndrome?

It is clear from the record that the Michigan state courts and the district court understood these two issues to be inherently intertwined, and addressed the questions together accordingly. Dando's initial post-sentencing motion in state court was styled "motion for payment of expert witness fees," in which Dando made clear she was "considering whether to withdraw her plea and asserting that she suffered from Battered Woman's Syndrome." The motion explicitly stated "[t]rial counsel was therefore ineffective for failing to request an expert witness." At the hearing on this motion, the state trial judge acknowledged that ineffective assistance of counsel was the basis for the motion by asking the prosecutor "[i]sn't her claim then on appeal ineffectiveness of counsel?" The prosecutor replied, "[t]hat's essentially what we have." After the trial court denied this motion, Dando's Application for Leave to Appeal, filed with the Michigan Court of Appeals, included the exact same sentence about trial counsel's ineffective assistance, as did her application to the Michigan Supreme Court. Both of these applications for discretionary appeal were summarily denied.

Despite the inseparability of Dando's request for an expert and her ineffective assistance of counsel claim, the state now contends that the ineffective assistance of counsel claim was never presented to the state's appellate courts, and that the district court should not have entertained this claim because Dando failed to meet the exhaustion requirements of 28 U.S.C. § 2254 (b) and (c). Given our determination that the two issues from the certificate of appealability are in fact one in the same and that Dando adequately referenced the ineffective assistance of counsel claim in her state court filings, we conclude that Dando did indeed present this claim to the state courts. She has thus "exhausted the remedies available in the courts of the State" as required under section 2254.

The state also contends that Dando's ineffective assistance of counsel claim is procedurally defaulted because she failed to follow the correct procedures in presenting it to the state courts. *See Clinkscale v. Carter*, 375 F.3d 430, 440 (6th Cir. 2004) ("[a] federal court is generally barred from considering an issue of federal law arising from the judgment of a state court if the state judgment 'rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the [state] court's decision.'" (quoting *Frazier v. Huffman*, 343 F.3d 780, 790 (6th Cir. 2003)). Specifically, the state points to a Michigan rule of appellate procedure regarding the format of briefs, which requires a statement of the questions involved, with each issue for appeal separately numbered. MICH. CT. R. § 7.212 (C)(5). The state claims that because Dando did not present the ineffective assistance of counsel claim with a separate preceding number in the title, the claim has been procedurally defaulted.

Because Dando's claim of ineffective assistance of counsel is effectively inseparable from her claim for a mental health expert, it is far from clear that she would have had to separately number it in her brief to meet the requirements of the state court rule. Both the Michigan Court of Appeals and the state Supreme Court denied Dando's Applications for Leave to Appeal without

issuing an opinion, so we have no way to know whether some inadequacy of these filings could have amounted to an "independent" and "adequate" basis for the rejection of her attempt to appeal the state trial court's decision under our procedural default precedent. *See Clinkscale*, 375 F.3d at 430. Moreover, a close look at the Michigan Rules of Court reveals that the rule identified by the state was not even relevant to Dando's state court filings. This rule explicitly governs the format for *briefs* filed on appeal. *See* MICH. CT. R. § 7.212. Dando never had an opportunity to file an appellate brief, because the state appellate courts denied both of her applications for leave to file a discretionary appeal. A separate Michigan Court Rule governs the filing of Applications for Leave to Appeal. *See* MICH. CT. R. § 7.205. The state has not identified any shortcomings of Dando's Application under this rule, nor does our review of Dando's filing and the text of the rule make any such shortcoming apparent. Because Dando has done all she could to properly raise her present claim in the state courts, her claim is not procedurally defaulted, she has met the exhaustion requirement of 28 U.S.C. § 2254 (b) and (c), and her claim as articulated above is properly before us.[1]

## IV.

Dando's claim that her trial counsel's failure to seek a mental health expert and to explore a potential defense based on duress and Battered Woman's Syndrome is governed by the standard set forth in *Hill.* 474 U.S. at 56. The Supreme Court stated in *Hill* that the two-part test to establish ineffective assistance of counsel, articulated earlier in *Strickland v. Washington*, 466 U.S. 668 (1984), "applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. at 58. Under that test, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the defendant was prejudiced by the attorney's error. *Id*. at 57-59. In the context of a challenge to a guilty plea, the defendant must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. The Supreme Court added that an assessment of prejudice must include a prediction of the likely outcome at trial. *Id*. In the case of an unexplored affirmative defense or undiscovered evidence, this prediction of the likely outcome at trial is relevant to determine whether or not the potential defense or evidence would have caused counsel to change the recommendation as to the plea. *Id*.

Dando's counsel failed here to adequately investigate the availability of a duress defense and the related possibility that Dando suffered from Battered Women's Syndrome. Dando informed her attorney that she had a long history of violent sexual and physical abuse, that Doyle beat her and threatened to kill her immediately before she participated in the robberies, and even requested a consultation with a mental health expert before entering her plea. The attorney refused to seek assistance from an expert, informing Dando that it would be too costly. This advice was flatly incorrect, as Dando would have been entitled to have the state pay for a mental expert under the Supreme Court's holding in *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) (holding that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and

---

[1] Additionally, the state argues that Dando waived her right to seek an expert and assert a defense by pleading guilty. This argument is not availing. Although a defendant might generally waive her right to put on a defense and seek an expert by pleading no contest, where the plea is challenged through an ineffective assistance of counsel claim, the availability of a defense and of an expert becomes relevant under *Hill* for determining whether or not the defendant suffered prejudice. *See Magana v. Hofbauer*, 263 F.3d 542, 551(6th Cir. 2001). The application here of the waiver approach suggested by the state would instead render *Hill* a nullity.

presentation of the defense").**2** Investigation of this potential defense was a minimal requirement to providing adequate representation at the plea stage, particularly since Dando herself told her attorney about her history of abuse, and even suggested the need for a mental health expert. *See O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (quoting *Strickland*, 466 U.S. at 690-91)). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.* The evidence in this case suggests that the attorney's decision was not an exercise in professional judgment because it reflected a misunderstanding of the law regarding the availability of a mental health expert. The state courts' determination that Dando's counsel's performance was not inadequate misapplied clearly established Supreme Court precedent that required counsel to adequately investigate potential defenses.

The fact that Dando received a relatively lenient sentence in exchange for her no contest plea does not render the failure to investigate Battered Women's Syndrome and duress a sound professional judgment. The state court praised the decision by trial counsel to raise Dando's abuse in obtaining a shorter sentence. However, had counsel investigated the potential defenses and pursued them at trial, Dando would have had a chance to be acquitted altogether, or convicted of only some of the counts charged and acquitted of others (perhaps if the jury found the duress to be more immediate during particular portions of the crime spree). Given this possibility, there is a likelihood that Dando would not have entered a plea, and that the failure to investigate undermined the knowing and voluntary nature of her plea. In showing deference to the decision to seek a plea bargain with a lower sentence, the state courts essentially conflated what were two critical decisions by Dando's attorney into one. Counsel had an obligation both to investigate potential defenses, *and* to subsequently ensure that Dando's history of abuse was accounted for at sentencing. If the attorney had assessed possible defenses, and still recommended a plea because in his judgment the defenses were long shots, his choice to negotiate a lower sentence based on Dando's history of abuse and to forego the potential defense would be sound, or at least entitled to some deference. However because he simply failed to assess a possible defense, due in part to his incorrect understanding of

---

**2***Ake* employed the three prong test balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine whether due process required a state to pay for a mental health expert at trial, as opposed to during consideration of a guilty plea. *Ake*, 470 U.S. at 77. The three relevant factors for this inquiry are the private interest at stake, the governmental interest, and the risk of an erroneous result without the safeguard in question. *Id.* These considerations apply with equal, if not greater force, in the guilty plea context. A defendant's decision to plead guilty and waive her right to a jury trial and to put on a defense implicates her significant private liberty interest, and given the relevant consequences, ensuring that a plea is entered knowingly and voluntarily presents as weighty a private interest as ensuring an accurate result at trial. Further, there is considerably less of a burden on the state in providing an expert in the guilty plea context than at trial, as all the expert would initially have to do would be to consult with the defendant, and presumably advise defense counsel as to any relevant findings. This work is a relatively small subset of what would be required of the trial expert, and significantly does not include preparing for or testifying at trial. Not only is the financial burden less in the plea context, but this burden and the state's interest in prevailing at trial are "necessarily tempered by its interest in the fair and accurate adjudication of criminal cases." *Ake*, 470 U.S. at 79. Finally, the risk of an inaccurate result in the form of a plea that is not knowing and voluntary presents an issue of significant constitutional concern. *See Tollett v. Henderson*, 411 U.S. 258, 263 (1973) ("we take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial."). In cases where the defendant's mental health is a potential issue at trial, and necessarily could undermine the knowing and voluntary nature of her plea, providing expert consultation would seem almost critical to ensuring a more accurate result. Because the validity of a guilty plea centrally involves the mental state of the defendant even more than does a jury verdict in that it must be knowing and voluntary, it would seem that an expert would be essential whenever mental health is a potentially relevant issue regarding the defendant's culpability. As indicated by *Ake*'s requirement of an expert, it would not be realistic to expect a defendant with mental health issues or her attorney to assess these issues on their own. For these reasons, *Ake* would require that the state appoint a mental health expert to advise a defendant regarding her plea whenever there is a showing that mental health is a relevant concern as to her guilt.

the law regarding the provision of a mental health expert[3], his advocacy at sentencing does not insulate the shortcomings at the plea stage.  Given these shortcomings, Dando has met the first requirement of *Hill*.

V.

The remaining question is whether Dando was prejudiced by the inadequate representation she received in deciding to plead guilty.  To meet the prejudice requirement, Dando "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  This determination depends in part "on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea" and the related inquiry of "whether the evidence likely would have changed the outcome of a trial." *Id*.  Dando argues that she would not have pled guilty had counsel investigated and discussed with her the possibility of presenting a duress defense based on Battered Woman's Syndrome.

The district court rejected this approach based on its determination that evidence Dando was suffering from Battered Woman's Syndrome would not have supported a duress defense.  The elements of duress under Michigan law are:

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
D) The defendant committed the act to avoid the threatened harm.

*People v. Lemons*, 454 Mich. 234, 247 (Mich. 1997).  Additionally, "the threatening conduct or act of compulsion must be "'present, imminent, and impending[,] [a] threat of future injury is not enough,' and []the threat 'must have arisen without the negligence or fault of the person who insists upon it as a defense.'" *Id*. (quoting *People v. Merhige*, 212 Mich. 601, 610-11 (1920)).  The district court found that Dando would have been unable to establish a duress defense because she had several opportunities to escape during the crime spree, and because the requirement for a duress defense that the threat create a fear in the mind of a reasonable person precludes the use of evidence of Battered Woman's Syndrome, which is inherently subjective.

We disagree with the district court's conclusion that evidence of Battered Woman's Syndrome is irrelevant to a duress defense under Michigan law.  Although we have not found, and the parties have not cited, a case that addresses the issue either way, the Michigan Court of Appeals has allowed evidence of Battered Woman's Syndrome to show the related affirmative defense of self-defense.  In *People v. Wilson*, 194 Mich. App. 599, 604 (Mich. Ct. App. 1992), the Michigan Court of Appeals endorsed the introduction of evidence of a defendant's Battered Woman's Syndrome "to explain how a battered spouse reacts to the batterer, to explain the reasonableness of the battered spouse's perception that danger or great bodily harm is imminent, and also to rebut the prosecution's inference that the defendant could have left rather than kill the spouse."  In the self defense context, the court agreed with the defendant that the evidence of Battered Woman's

_____

[3]Dando's attorney informed her that she was not entitled to a mental health expert prior to entering a guilty plea. This is incorrect.  Under *Ake*, 470 U.S. at 77-79, a defendant is entitled to a mental health expert if a mental health expert is necessary to help the defendant determine whether to proceed to trial.  *See infra* at note 2.  In this case, a mental health expert was clearly needed for this purpose, and thus Dando was entitled to the assistance of a mental health expert.

Syndrome could be introduced to the jury "because it relates to the question whether she *reasonably* believed her life was in danger." *Id*. at 602 (emphasis added).

This reasoning makes clear that the theory of Battered Woman's Syndrome is not at odds with a reasonableness requirement — if anything, evidence of Battered Woman's Syndrome can potentially bolster an argument that a defendant's actions were in fact reasonable. Although those of us who are not so unfortunate to have to live with constant, imminent threats of violence might look at the actions of a defendant in Dando's situation from the relative comfort of a judge's chambers or a jury box and wonder what reasonable person would have facilitated Doyle's shocking crime spree, evidence of Battered Woman's Syndrome can explain why a reasonable person might resort to such actions given a history of violent abuse and the imminent violent threats. Additionally, as the *Wilson* court noted, this evidence is relevant to show why a defendant did not leave the company of her abuser. For these reasons, we believe that evidence of Battered Woman's Syndrome could potentially have been relevant to all of the elements of a duress defense under Michigan law.

Dando's experience of abuse is itself shocking, and would present a potentially compelling duress defense based on Battered Woman's Syndrome. Dando's mother was a drug addict, who would "lend out" Dando to drug dealers for months at a time to pay off her drug debts, from the time Dando was six years old until she was twelve. Dando was forced to perform sex acts upon the dealers. Her parents abused her both physically and sexually, and her father took photographs of her which the state court described as shocking and appalling. Dando's first husband seems to have abused her to the point where she was "scared to death of him." Doyle also violently abused Dando, and one of the affidavits submitted by an acquaintance claimed that Doyle said he was "selling" Dando. Doyle threatened and hit Dando on the morning of the offenses, possibly giving her a concussion and requiring her to seek medical attention. Doyle's reckless and violent behavior is also exemplified by his brandishing of a shotgun, repeated robbery attempts, and eventual armed confrontation with the police that resulted in his death.

With help from an expert on Battered Woman's Syndrome, Dando could have introduced evidence of all of the elements of a duress defense. Just prior to embarking on the crime spree, Doyle had threatened her life if she did not cooperate. Given Doyle's propensity for violence, with which Dando had sadly become too familiar, a reasonable person in her situation would likely have feared death or serious bodily harm. Dando's testimony could also support conclusions that the threats in fact caused her to fear death or serious bodily harm, that this fear was operating upon her mind at the time of her cooperation with Doyle, and that she cooperated with Doyle to avoid the threatened harm. Evidence of Battered Woman's Syndrome would also have been relevant to explain why Dando may have felt unable to escape the situation.

For purposes of evaluating prejudice under *Hill*, we need not determine to an absolute certainty that a jury would have acquitted Dando based on a defense of duress. Rather, we need only find a likelihood of a favorable outcome at trial such that Dando's counsel would not have given the same recommendation and she likely would have rejected the guilty plea. We find there to be a sufficient likelihood here to establish ineffective assistance of counsel under *Hill*. Because the state courts failed to apply this well established Supreme Court precedent, the writ of habeas corpus should be granted by the district court.

## VI.

For the foregoing reasons, the district court's order denying Dando's writ of habeas corpus is reversed. The case is remanded to the district court, with instructions to issue the writ requiring the state to vacate Dando's guilty plea.

---

**DISSENT**

---

RALPH B. GUY, JR., dissenting. I agree that the question is whether petitioner was denied effective assistance of counsel, and that this claim was not waived. I respectfully dissent, however, from the result reached by the court.

A claim of ineffective assistance of counsel requires proof that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The trial court was the only state court to address this claim on the merits. While not parsed out under the *Strickland* framework, the trial court made the following findings: (1) that the decision to abandon potential defenses in exchange for a favorable sentencing agreement is a common defense strategy; (2) that, as a factual matter, Dando had several opportunities to remove herself from the crime spree, but did not; and (3) that trial counsel had acted appropriately and secured a "very good break" on Dando's sentence as a result of the plea.

Arguing first that the state court's rejection of this claim was based on an unreasonable determination of the facts under § 2254(d)(2), Dando focuses on the trial judge's explanation that the decision to enter the plea was "a choice made there by her attorney in counseling her, and they both made a choice together that it would be best for her to plead and move onward, rather than going to trial and setting up the defenses that may have been available to her." Specifically, she claims it was unreasonable to find that "they both made the choice together" because it was contradicted by her insistence at sentencing that she was trying to prove that she did not have a choice about joining in the crime spree. The significance of this finding, however, was not that they had made the decision together but, rather, that counsel's failure to pursue possible defenses was a strategic decision.

Under the unreasonable application clause of § 2254(d)(1), it is not sufficient that a reviewing court find in its independent judgment that the state court decision applied clearly established law erroneously or incorrectly; the application must also be objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 411 (2000). In this case, the claim is that trial counsel provided constitutionally defective assistance because he failed to pursue a duress defense before advising Dando to accept the plea-bargained sentence. Specifically, petitioner faults counsel (1) for failing to obtain the emergency room records; and (2) for failing to request payment for an expert on battered woman syndrome. The district court concluded after examining the law on duress and the admissibility of testimony from an expert on battered woman syndrome, that the state court decision was not objectively unreasonable because it would have been fruitless for trial counsel to have pursued a duress defense at trial.

The Supreme Court has made clear that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91; *see also Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). When it is alleged that the defendant was prejudiced by the failure of counsel to advise him of a possible defense before he pleaded guilty, the prejudice inquiry will depend largely on whether the defense "likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Because both the reasonableness of counsel's strategic decision and the prejudice inquiry are informed by the likelihood that a duress defense would have been successful at trial, one must begin with the relevant Michigan law.

In Michigan, duress is a common-law affirmative defense that arises in situations where the crime committed avoids a greater harm. *People v. Lemons*, 562 N.W.2d 447, 453 (Mich. 1997). To be entitled to an instruction on the defense of duress, the defendant bears the burden to produce some evidence from which the jury could conclude that each of the following elements are present:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

> C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

> D) The defendant committed the act to avoid the threatened harm.

*Id*. (quoting *People v. Luther*, 232 N.W.2d 184, 187 (Mich. 1975)). The Michigan Supreme Court elaborated that the threatening conduct must be "'present, imminent, and impending'"; that "'threat of future injury is not enough'"; and that "'the threat must have arisen without the negligence or fault of the person who insists upon it as a defense.'" *Id*. at 454 (quoting *People v. Merhige*, 180 N.W. 418, 422 (Mich. 1920)). Also, a defendant may forfeit a duress defense when he fails to use a reasonable opportunity to escape if it would not unduly expose him to death or serious bodily injury. *Id*. at n.18 (citing LaFave & Scott, Substantive Criminal Law, § 5.3, pp. 619-20).[1]

The court and counsel were, by all accounts, aware of Dando's lifelong history of being abused and that she had been abused by Doyle as well. The emergency room records concerning the treatment she received in the hours before the crime spree were not obtained by trial counsel. No attempt has been made to demonstrate how these records might have supported a duress defense. Even if they were to provide an account of abuse by Doyle before the crime spree began, a successful duress defense would require evidence that Dando committed the crimes under present, imminent, and impending threat of death or serious bodily harm. Neither past abuse nor the fear of future abuse at the hands of Doyle would be sufficient.

The facts as admitted by Dando support the trial court's factual finding that she had several opportunities to remove herself from the crime spree, but did not. The undisputed facts are that Dando rode alone with the first victim before he was robbed, went in alone to "case" the party store where the cashier was robbed, and waited alone in the truck while Doyle confronted the other victims. That being the case, it is hard to imagine that a duress defense would be likely to succeed at trial. This leaves the question of counsel's failure to request payment of an expert on battered woman syndrome.

Short of adopting battered woman syndrome, the Michigan Supreme Court has held that expert opinion evidence regarding the syndrome may be admissible when relevant to explain behavior that would be incomprehensible to the average person. *People v. Christel*, 537 N.W.2d 194 (1995). Such evidence is typically offered when a defendant charged with killing her abuser is claiming self defense, or when a complainant files charges against her abuser after years of tolerating the abuse. *Id*. at 202. Even then, however, the expert may not testify that the individual suffered from battered woman syndrome, but may explain the generalities or characteristics of the

---

[1] The Court also indicated that the elements required to establish the defense in Michigan were substantially similar to those required in federal court: "(1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) lack of a reasonable opportunity to escape the threatened harm." *Lemons*, 562 N.W.2d at 454 n.19 (citing *United States v. Beltran-Rios*, 878 F.2d 1208 (9th Cir. 1989)).

syndrome to explain specific behavior brought out at trial. *Id.* at 201. Petitioner has not indicated what an expert on battered woman syndrome might have contributed to her defense. This is not a typical case in which the characteristics of the syndrome might be relevant, and an expert would not likely have been permitted to testify that Dando suffered from battered woman syndrome at the time of the offenses. *See People v. Neff*, No. 206498, 2000 WL 33538583 (Mich. App. Jan. 11, 2000) (unpublished) (holding exclusion of evidence of battered woman syndrome did not deny defendant the right to present a defense).

It is also questionable whether the evidence would be relevant to the defense of duress. Because duress requires objective reasonableness—that the threat be sufficient to cause a *reasonable person* to fear death or serious bodily injury and the absence of a *reasonable opportunity* to avoid violating the law—I agree with the district court that evidence that a defendant suffered from battered woman syndrome is not relevant to a duress defense. As one court explained:

> Such evidence is not addressed to whether a person of reasonable firmness would have succumbed to the level of coercion present in a given set of circumstances. Quite the contrary, such evidence is usually consulted to explain why this particular defendant succumbed when a reasonable person without a background of being battered might not have. Specifically, battered woman's syndrome evidence seeks to establish that, because of her psychological condition, the defendant is unusually susceptible to the coercion.

*United States v. Willis*, 38 F.3d 170, 175 (5th Cir. 1994).

Despite having reason to believe Dando had been abused by Doyle, it was not unreasonable for counsel to decide not to pursue a duress defense based on battered woman syndrome given the undisputed circumstances of the crime spree and the questionable relevance and limited admissibility of such testimony. It was not objectively unreasonable for the state court to find that counsel's decision to abandon a possible duress defense in favor of the plea was a reasonable strategic decision. Nor has petitioner averred that she would not have entered the plea if counsel had fully pursued the duress defense. I conclude that the state court's decision that petitioner was not denied effective assistance of counsel did not involve an unreasonable application of Supreme Court precedent. *See Gumangan v. United States*, 254 F.3d 701, 705 (8th Cir. 2001) (holding no ineffective assistance where counsel did not advise defendant of a possible defense based on duress and battered woman syndrome).