**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0226n.06

No. 09-2542

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Feb 27, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| David Flick, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Millicent Warren, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT and ROGERS, Circuit Judges; and POLSTER, District Judge.[*]

**MERRITT, Circuit Judge.**  David Flick appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He was convicted of second degree murder in the death of his girlfriend's eight-month-old son, David McBain, and is currently serving a sentence of 30 to 75 years' imprisonment.  The issues on appeal are (1) whether trial counsel was ineffective for failing to investigate or challenge the science underlying shaken baby syndrome; (2) whether trial counsel was ineffective for failing to investigate or challenge testimony asserting that a short fall could not have caused David's fatal injuries; and (3) whether appellate

---

[*]The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

counsel was ineffective for failing to raise trial counsel's deficiencies on appeal. None of Flick's claims before this court entitles him to relief, and we affirm the district court's judgment.

## I. Background

Flick lived with his girlfriend, Tina McBain, and her eight-month-old son, David. Flick typically worked during the day and cared for David at night while Tina McBain was at work. On May 8, 1998, Flick drove Tina McBain to work at 4:00 p.m. before returning home to look after David. At 8:00 p.m., Flick banged on his neighbor's, William Jackson's, door and asked for help with David, who was by then limp and unresponsive. Jackson instructed his son, Aaron, to call 911. While waiting for the paramedics, Flick told Jackson that, earlier in the day, David had fallen off an 18-inch-high waterbed and that a dog had jumped on David. Flick said that David seemed fine at the time and only exhibited distress when Flick fed him a few hours later. He repeated this story to the paramedics, to Dr. Carlson at Lakeland Hospital, to Officer Hopke who was called to investigate the suspected child abuse, and finally to doctors at Bronson Hospital where David was transferred. Only later did Flick tell Tina McBain that he had dropped David from his arms and hit David's head on a door as he rushed to the neighbor's house. The latter version of events was Flick's story at trial. He explained that he did not initially tell the truth because he was scared.

Meanwhile, David's condition progressively worsened until, on the morning of May 9, Dr. Fain at Bronson Hospital pronounced him brain dead and removed him from life support. Flick was charged with second degree murder and, after a mistrial, was convicted and sentenced on April 12, 1999 to 30 to 75 years' imprisonment. The prosecution presented at least two medical theories to explain David's death. First, several doctors testified that David's death was a result of shaken baby

syndrome. Second, state prosecutors presented evidence that blunt-force trauma caused David's severe skull fractures and, ultimately, his death. The state's medical witnesses testified that David's injuries could not have been caused by a fall, even from 40-inches, or by a dog jumping on David's abdomen. Flick did not call an expert to testify as to how David died.

Flick appealed his conviction and sentence, and the Michigan Court of Appeals affirmed on August 17, 2001. The Michigan Supreme Court denied leave to appeal. Flick then filed a motion for relief from judgment, which was denied on March 24, 2003, and his appeals to the higher state courts were also subsequently denied on August 20, 2004 and May 31, 2005. Flick then filed a habeas petition. After holding an evidentiary hearing–at which Dr. Uscinski testified that David's death was caused by a short fall and not by shaken baby syndrome–and reviewing the depositions of Flick's trial and appellate counsel, the district court denied Flick's petition on November 5, 2009. The district judge did grant Flick a certificate of appealability on the court's resolution of the "ineffective assistance of trial and appellate counsel claims . . . ." *Flick v. Warren*, No. 2:05-CV-73367, 2009 WL 3698547, at *28 (E.D. Mich. Nov. 5, 2009). This appeal followed.

## II. Standard of Review

We review *de novo* a district court's denial of a writ of habeas corpus. *See Dando v. Yukins*, 461 F.3d 791, 795-96 (6th Cir. 2006). But we review its factual findings for clear error. *See id.* at 796. A court may only grant a writ of habeas corpus on an adjudicated issue if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. 2254(d)(1). The federal court must also presume that the state court's factual findings are correct. 28 U.S.C. §

2254(e)(1). If a petitioner fairly presents an issue in state court but the state court fails to address it, the federal court must conduct an independent review of "the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

### III. Discussion

Flick argues that his trial attorney was ineffective for failing to investigate or challenge the scientific basis for shaken baby syndrome and for failing to investigate studies suggesting that infants can die from short, 40-inch falls. Flick also argues that his appellate counsel was ineffective for failing to raise trial counsel's errors.

All of Flick's arguments are analyzed under *Strickland v. Washington*, which requires that the petitioner show (1) that his or her counsel's performance was constitutionally deficient and (2) that the deficiency prejudiced the defense sufficiently to undermine the reliability of the trial. *See* 466 U.S. 668, 687 (1984). To be constitutionally deficient, counsel's performance must fall "below an objective standard of reasonableness." *Id.* at 688. To satisfy this standard, petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. For ineffective assistance of counsel to cause prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id. at 694.* Because Flick challenges not just his counsel's choices but also the investigation that led to those choices, we must keep in mind one final standard. "[S]trategic choices made after less than complete

investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 690-91.

A. Ineffective Assistance for Failure to Challenge the Science of Shaken Baby Syndrome

First, Flick asserts not only that trial counsel's performance was deficient when he failed to call an expert to challenge the science underlying shaken baby syndrome but also that counsel was ineffective for failing to even investigate the science behind shaken baby syndrome. Michigan asserts in its appellate brief that both versions of this claim are procedurally defaulted. *See Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003). The district court did reject, as procedurally defaulted, Flick's claim that counsel was "ineffective in failing to request a continuance or to retain an investigator following the change in Dr. Fain's expert opinion." *See Flick*, 2009 WL 3698547, at *10-15. The district court, however, addressed the merits of Flick's claim that his counsel was ineffective for "failing to retain an expert to attack the science underlying shaken baby syndrome." *See id.* at *15-16. Because Flick is not entitled to relief on the merits of his claim that counsel was ineffective in failing to challenge the science behind shaken baby syndrome, we decline to address for the first time on appeal whether this claim was procedurally defaulted.

Flick argues that the district court erred when it concluded that his counsel was not ineffective for failing to call an expert to challenge the science underlying shaken baby syndrome. Around the time of Flick's trial, there was some controversy surrounding whether there is any empirical basis for shaken baby syndrome. Trial counsel could have called an expert, like Dr.

Uscinski, to testify to this controversy, potentially undermining one of the prosecution's theories for the cause of David's death. The district court concluded that trial counsel was not ineffective because he decided not to seek an expert only after he had contacted three doctors seeking help with the case. After receiving unfavorable responses from all three, trial counsel decided to focus the defense on the absence of eyewitness testimony and Flick's benign predisposition. This was not an unreasonable strategic choice. Each letter from counsel to an expert demonstrates an understanding of the issues in the case and contained detailed descriptions of the medical facts. Nevertheless none of the doctors volunteered assistance. Although trial counsel's letters did not mention shaken baby syndrome, we can presume that the doctors were familiar with it, and none of them raised the incipient controversy behind the syndrome. Instead, one doctor, Dr. Sperry, called the situation a "case of flagrant child abuse." He also said that David "died of inflicted injuries." Trial counsel's choice to focus on other aspects of Flick's defense was not unreasonable in light of these communications. Effective assistance does not require counsel to continue contacting experts until he found one, like Dr. Uscinski, willing to testify against the prosecution's theory of the case. Counsel's performance was an "exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

In his brief, Flick contends that the district court misinterpreted his claim as only challenging trial counsel's failure to call an expert to challenge the science behind shaken baby syndrome. Rather, Flick claims that counsel was also ineffective for failing to investigate the science behind shaken baby syndrome so that he could contest the scientific basis for the testimony of the prosecution's experts. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). In Flick's

view, if trial counsel had investigated the science behind shaken baby syndrome, he would have discovered the academic controversy. Armed with this knowledge, trial counsel could have prevented some of the prosecution's witnesses from qualifying as experts because their testimony was not derived from the scientific method. *See id.* at 590. Although it did not specifically mention a *Daubert* challenge, the district court did find that trial counsel was "not ineffective in failing to discover and explore" the controversy behind shaken baby syndrome. *Flick*, 2009 WL 3698547, at *16. After surveying the scientific research on the issue, the court found that, while some scientists including Dr. Uscinski had begun to question shaken baby syndrome by the time of Flick's trial, the questioning was not so pervasive that it was unreasonable for trial counsel to have been unaware of the controversy. What controversy there was apparently represented the minority view. In the end, even if trial counsel had attempted to mount a *Daubert* challenge to the prosecution's experts, he likely would have failed to unseat the prevailing scientific consensus. Flick cannot be prejudiced by counsel's failing to take actions that would ultimately be unsuccessful. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). The district court correctly found that trial counsel was not ineffective.

### B. Ineffective Assistance for Failure to Investigate Infant Deaths From Short Falls

Flick next argues that trial counsel was ineffective for failing to investigate or use on cross-examination certain studies that discussed incidents where toddlers died after falling from shopping carts approximately 40-inches high. Trial counsel possessed these studies prior to trial but failed to investigate further, which, according to Flick, would have led counsel to Dr. Uscinski in time to testify. During the evidentiary hearing before the district court, Dr. Uscinksi swore that had he been

at trial he would have testified that David's death was caused by a short fall and not by shaken baby syndrome. The state courts never addressed this claim. Nor did the district court because the claim was not in Flick's habeas petition. Instead, Flick only learned that counsel possessed these studies in time for trial after deposing trial counsel on February 27, 2009. Because the district court did not address this claim it could not have been in the certificate of appealability that the district court issued. We do not consider issues not certified for appeal. *See Searcy v. Carter*, 246 F.3d 515, 518 (6th Cir. 2001). Although the district court did issue the certificate on its resolution of the "ineffective assistance of trial and appellate counsel claims . . . .", this blanket term was meant to include only the many ineffective assistance claims that Flick brought and the district court resolved in its opinion. *Flick*, 2009 WL 3698547, at *28. The certificate of appealability does not allow Flick to fashion new claims that fit within the category of ineffective assistance. *See Dunham v. United States*, 486 F.3d 931, 934-35 (6th Cir. 2007) (refusing to address the merits of ineffective assistance claims not specifically mentioned in the certificate of appealability). We decline to reach the merits of whether trial counsel was ineffective for failing to investigate studies of deaths caused by short falls.

C. Ineffective Assistance of Appellate Counsel for Failing to Raise Trial Counsel's Deficiencies

Finally, Flick argues that his counsel on direct appeal was ineffective for failing to recognize and raise trial counsel's ineffectiveness with regard to the science behind shaken baby syndrome and infant fatalities from short falls. Ineffective assistance of appellate counsel requires the same showing of deficient performance and prejudice articulated in *Strickland*. *See Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). In this case, the district court correctly concluded that because none

of the claims appellate counsel failed to raise was meritorious, Flick cannot show that he was prejudiced by the failure to raise any of them. Appellate counsel need not raise every frivolous issue on appeal but only those that would create a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. Because Flick cannot show that trial counsel was ineffective for failing to investigate and challenge the science behind shaken baby syndrome, appellate counsel cannot be ineffective for failing to raise this issue. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). We do not address Flick's claim that appellate counsel was ineffective for failing to investigate and use studies involving infant fatalities from short falls because, like the trial counsel version of this claim, it was never discussed in any lower court and is not part of the certificate of appealability. *See Searcy*, 246 F.3d at 518. The district court was correct in denying Flick's ineffective assistance of appellate counsel claims. For all the above reasons, we affirm the district court's judgment denying Flick's habeas petition.