*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PATRICK SIMMONS,

    *Petitioner-Appellant,*

    *v.*

ROBERT KAPTURE,

    *Respondent-Appellee.*

No. 03-2609

---

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 01-00027—Gordon J. Quist, District Judge.

Argued: September 14, 2006

Decided and Filed: January 26, 2007

Before: MARTIN and DAUGHTREY, Circuit Judges; REEVES, District Judge.[*]

---

## COUNSEL

**ARGUED:** E. Michael Rossman, JONES DAY, Columbus, Ohio, for Appellant. B. Eric Restuccia, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** E. Michael Rossman, JONES DAY, Columbus, Ohio, for Appellant. B. Eric Restuccia, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Timothy A. Baughman, OFFICE OF THE PROSECUTING ATTORNEY, Detroit, Michigan, for Amici Curiae.

MARTIN, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. REEVES, D. J. (pp. 10-17), delivered a separate dissenting opinion.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Petitioner Patrick Simmons appeals the district court's denial of his petition for a writ of habeas corpus in which he sought to challenge his guilty plea entered in Michigan state court. Simmons claims that his plea was not knowing and voluntary, that he was denied effective assistance of counsel in the plea stage, and that the state should have provided him appointed counsel to represent him in the appellate process under the Supreme Court's recent decision in *Halbert v. Michigan*, 545 U.S. 605, 125 S. Ct. 2582 (2005). Simmons filed the

---

[*] The Honorable Danny Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

present petition before the decision issued in *Halbert*. After the district court denied him relief, and this Court denied him a certificate of appealability, he filed a writ of certiorari with the Supreme Court. The Supreme Court granted the writ, remanding the case to this Court for further consideration in light of *Halbert*.

## I.

Simmons's guilty plea arose from an incident that occurred in April 1998 at the Rainbow Hotel in Grand Rapids, Michigan, where he was residing at the time. Simmons had become disabled in 1969 from a head injury, which he claims has caused him to suffer from "confusion" ever since. He had a severe problem with alcohol abuse, and appears to have been overindulging with some friends at the time, including the victim, Adrian Blystra, who was staying in Simmons's room at the hotel. On the morning of April 5, Simmons lit Blystra's shirt on fire, causing Blystra to suffer significant burns on his back and shoulder. The parties dispute what Simmons's intention was in setting the shirt on fire — he characterizes it as a practical joke, while the state describes his mental state in much more malicious terms.

Blystra continued to live in Simmons's apartment at the hotel for several more days, during which time Simmons provided him with Neosporin to help him treat his burn, but he eventually moved out. Toward the end of April, Blystra sought to have criminal charges brought against Simmons, and on April 30, Simmons was arrested and charged with assault with intent to do great bodily harm less than murder, as well as a habitual offender charge. In return for Simmons's agreement to plead guilty to the assault charge, the prosecutor dropped the habitual offender charge and agreed to recommend a sentence of five to ten years.

During the October 5, 1998 plea hearing, in an attempt to have Simmons "state the elements of the offense," the prosecutor, defense counsel, and the trial judge asked him numerous questions about his intent in setting Blystra on fire. Simmons repeatedly stated that he set the fire as a joke, to wake Blystra up, and to get Blystra's attention. He also repeatedly denied attempting to injure Blystra, and stated that he was quite inebriated at the time. Eventually, however, Simmons agreed with the prosecutor's statement that he "went up to a man who was passed out, and [] lit him on fire, knowing that would cause him injury. . . ." Joint App'x at 246.

Both the prosecutor and defense counsel repeatedly tried to contradict Simmons's characterization of the incident as a joke. Defense counsel essentially cross-examined him about his intent, and argued to the court that Simmons had admitted sufficient mens rea for the court to accept his plea. The trial judge expressed significant hesitation in accepting the plea, in apparent recognition of Simmons's wavering explanations of his mental state. The judge noted that "he stated basically his intent was to wake Mr. Blystra up, and he didn't have any idea that he would be injured to any extent," *id*. at 245, and described the explanation of Simmons's intent as "shaky." *Id*. at 243. Eventually however, the trial court accepted the plea, explaining that "it's not per se that it will satisfy this Court, but I believe that there is [sic] still higher courts that may well review this matter, and they're certainly entitled to do that, although it's not a right of appeal. I think we have covered enough in this that I'm satisfied as well as counsel being satisfied that we've covered the elements of this offense." *Id*. at 248.

## II.

Simmons's case followed a complicated procedural route between the entry of his guilty plea and his current filing in this Court. Just over a month after the entry of his plea, on November 19, 1998, Simmons requested that the trial court appoint him appellate counsel to assist him in filing an application for leave to appeal in the Michigan Court of Appeals. His proffered basis for appeal was that he had been forced by the terms of the plea offer to plead guilty. This request for counsel was

denied on December 1. Simmons then filed an application for leave to appeal pro se in January 1999. That request was denied for failing to follow the court rules regarding the number of copies to be filed. On November 10, 1999, Simmons filed a pro se motion for relief from judgment in the trial court, challenging his plea on the basis that it was involuntary and not supported by the facts, and claiming ineffective assistance of counsel. This motion was also denied by the trial court, as was his subsequent motion for reconsideration. Simmons then filed another application for leave to appeal the trial court's decision with the Michigan Court of Appeals, again without the assistance of counsel, which again was summarily denied. Simmons sought a discretionary appeal of the Court of Appeals's decisions with the Michigan Supreme Court, and this final request to the state courts was also denied.[1]

Simmons next turned to the federal courts, filing a petition for writ of habeas corpus in the United States District Court for the Western District of Michigan on February 20, 2001. He claimed in the habeas petition that his plea was not supported by sufficient evidence, and that he was denied effective assistance of counsel at the plea stage. At the outset, Simmons sought a stay of the proceedings so as to obtain counsel. This request was denied by the district court. The district court also denied Simmons's motion for an evidentiary hearing, and his case was referred to a magistrate judge. In a report and recommendation filed on September 24, 2003, the magistrate recommended that the habeas petition be denied. The magistrate reasoned that Simmons's plea was knowing and voluntary, as Simmons understood the nature of the charge against him and the sentence to which he was subject, and also found that the Constitution did not require the state court to establish a factual basis for a guilty plea. The magistrate agreed with the state court that Simmons's attorney effectively represented him at the plea stage by persuading the trial court to accept a desirable plea bargain, and that this approach explained her choice not to interview additional witnesses or to elicit factual testimony from Simmons to support the plea. Finally, the magistrate addressed Simmons's habeas claim for the state's failure to appoint him appellate counsel, noting that under *Ross v. Moffit*, 417 U.S. 600 (1974), a state court does not have to appoint counsel in a discretionary appeal. Because appeals from guilty pleas in Michigan were discretionary, the magistrate rejected this claim as well.

The district court adopted the magistrate's report and recommendation, and denied Simmons a certificate of appealability on November 7, 2003. This Court also denied Simmons's application for a certificate of appealability on August 19, 2004. Undeterred after this string of rejections from the courts of Michigan and those of this Circuit, Simmons subsequently petitioned for a writ of certiorari with the United States Supreme Court. On June 28, 2005, the Supreme Court granted the writ, and simultaneously vacated the judgment and remanded to this Court for further consideration in light of *Halbert v. Michigan*, 545 U.S. 605 (2005). In response, this Court issued a certificate of appealability for the present appeal, which defined the issues of Simmons's claim as (1) whether

---

[1] In an amicus curiae brief in support of the state, the Prosecuting Attorneys Association of Michigan ("PAAM") attempts to argue that Simmons's claim for appointed appellate counsel under *Halbert* is unexhausted, stating that "[i]t has never been presented in the Michigan system, and certainly not to the Michigan Supreme Court." PAAM Br. at 5, n. 5. This argument is not made by the respondent.

Simmons clearly presented arguments that he was entitled to appointed appellate counsel in his initial applications for leave to appeal with both the Michigan Court of Appeals and the Michigan Supreme Court. Amicus PAAM thus seems to be arguing that despite exhausting his claims in state court before filing the present habeas petition, Simmons should be required to pursue his claims yet again in state court (and apparently seek to stay proceedings on his habeas petition) because while his habeas petition was pending, the Supreme Court decided *Halbert*, which would lend him added support. Although Amicus identifies Michigan authority that would **allow** Simmons to re-file in state court, it points to no federal authority that extends AEDPA's exhaustion requirement to **require re**-filing in state court, nor is such a requirement apparent from the text of the statute. *See* 28 U.S.C. § 2254(b)(1)(A) (prohibiting granting a habeas writ "unless it appears that the applicant has exhausted the remedies available in the courts of the State."). We believe that Simmons's repeated attempts for state court appellate review clearly meet AEDPA's exhaustion requirements.

*Halbert* affords any relief for Simmons; (2) whether Simmons's guilty plea was valid, and whether this issue has been waived; and (3) whether trial counsel was ineffective, and whether this issue has been waived.

## III.

This Court reviews a district court's decision regarding a writ of habeas corpus de novo. *Dando v. Yukins*, 461 F.3d 791, 795 (6th Cir. 2006). Factual findings made by the district court are reviewed for clear error unless the factual determinations are made based on state court documents, in which case they are considered de novo. *Id*. at 796.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief

> on any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim either —
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Here, because the state courts declined to address the merits of Simmons's claims at all when they denied all of his applications for leave to appeal, his claims were not "adjudicated on the merits" in state court, and AEDPA's deferential standard of review does not apply. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

## IV.

### A. *The Supreme Court's Holding in* Halbert

In *Halbert v. Michigan*, the Supreme Court held that "the Due Process and Equal Protection Clauses require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." 125 S. Ct. at 2586. The Court noted that its decision was "framed by two prior [Supreme Court] decisions concerning state-funded appellate counsel," *Douglas v. California*, 372 U.S. 353 (1963), and *Ross v. Moffitt*, 417 U.S. 600 (1974). In *Douglas*, the Court had held that states are required to appoint counsel for an indigent defendant's "first-tier" appeal as of right, reasoning that such an appeal involved the merits of the case and differs from subsequent levels of review where another appellate court has already reviewed the claims. In *Ross*, the Court declined to extend *Douglas* to require appointed counsel for "second-level" discretionary appeals filed with the North Carolina Supreme Court. The *Ross* Court distinguished *Douglas* by reasoning that "both the opportunity to have counsel prepare an initial brief in the Court of Appeals and the nature of discretionary review in the Supreme Court of North Carolina make this relative handicap [of proceeding pro se] far less than the handicap borne by the indigent defendant denied counsel on his initial appeal as of right in *Douglas*." 417 U.S. at 616.

In *Halbert*, the Court addressed Michigan's rule governing appeals from pleas of guilty or nolo contendere, which unlike most appeals from criminal convictions are not heard as of right, but only after the discretionary grant of a convicted defendant's application for leave to appeal. 125 S. Ct. at 2587-88. The Michigan Constitution was amended to include this provision in 1994, so as to reduce the workload of the Michigan Court of Appeals, which had previously "adjudicated appeals as of right from all criminal convictions." *Id*. After the enactment of this provision, the Michigan Supreme Court determined that the Federal Constitution did not require the state to appoint appellate

counsel for indigent defendants seeking review in the state Court of Appeals. *Id*. (*citing People v. Bulger*, 462 Mich. 495, 511 (Mich. 2000)). Like Simmons, Halbert sought appointed counsel to file an application for leave to appeal his guilty plea. *Id*. at 2589-90. His requests were denied, as were his applications for leave to appeal by both the state Court of Appeals and the Michigan Supreme Court. *Id*. at 2590. The Supreme Court granted certiorari of the state supreme court's decision, and vacated the state courts' judgments.

At the outset of its opinion, the Court in *Halbert* noted that although the Federal Constitution did not require states to provide any appellate review of criminal convictions whatsoever, "having provided such an avenue, [] a State may not 'bolt the door to equal justice' to indigent defendants." *Id*. at 2586. The Court stated that its holding was based both on the Equal Protection concern regarding "the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs," as well as the Due Process concern of "the essential fairness of the state-ordered proceedings." *Id*.

The state argued that because an appeal from a guilty plea is discretionary pursuant to state law, the case should be governed by *Ross*. Halbert contended that *Douglas* required the state to appoint counsel for an application for leave to appeal with the Michigan Court of Appeals, because it amounted to a first-tier appellate proceeding. The Court agreed with Halbert, finding the situation more analogous to that in *Douglas* because "in determining how to dispose of an application for leave to appeal, Michigan's intermediate appellate court looks to the merits of the claims made in the application [and because] indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves." *Id*. at 2590. The Court distinguished *Ross* by noting that unlike the North Carolina (or Michigan) Supreme Court, which granted leave to hear appeals on matters other than the commission of error by a lower court, such as matters of significant public interest, "the Michigan Court of Appeals, because it is an error-correction instance, is guided in responding to leave to appeal applications by the merits of the particular defendant's claims, not by the general importance of the questions presented." *Id*. at 2591. Further, "the Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely the only, direct review the defendant's conviction and sentence will receive." *Id*. Given these similarities between the Michigan procedure for appeals from guilty pleas and the issue presented in *Douglas*, the Court held that the Equal Protection and Due Process clauses required Michigan to appoint counsel for applications for leave to appeal from guilty pleas filed in the Michigan Court of Appeals. Thus, although there are no constitutional problems with a state's decision to make certain criminal appeals discretionary, state courts are required to provide appointed counsel for indigent defendants who seek leave to appeal their guilty pleas.

### *B. Application of* Halbert *to Simmons's petition for habeas relief*

There is no dispute that under the rule from *Halbert*, were Simmons's plea to be entered today, the state would be required to appoint an attorney to represent him in filing an application for leave to appeal. The question we must address is whether the rule applies retroactively to affect Simmons's habeas claim. Both parties recognize that Simmons's conviction was final at the time of the *Halbert* decision, and that the applicability of *Halbert* turns on the Supreme Court's holding in *Teague v. Lane*, 489 U.S. 288 (1988), that new rules of criminal procedure do not generally apply retroactively to cases proceeding on collateral habeas review, unless they meet one of two specific exceptions. Simmons contends that *Halbert* applies retroactively because it did not create a new rule, but simply applied the existing rule from *Douglas*. In the alternative, Simmons argues that the *Halbert* rule falls under the *Teague* exception regarding "watershed rules of criminal procedure." The state disagrees with both of these contentions, and argues that *Teague*'s general rule against retroactivity bars the application of *Halbert* to Simmons's habeas petition.

The *Teague* Court explained what amounted to a "new rule" of criminal procedure as follows: "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301 (internal citations omitted). The Court has also noted that a decision does not announce a new rule where it "simply applie[s] a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law." *Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (*quoting Mackey v. United States*, 401 U.S. 667, 695 (1971) (Harlan, J., concurring in part and dissenting in part)).

Under this approach, Simmons argues convincingly that *Halbert* did not announce a new rule at all, but merely applied the forty-year-old rule from *Douglas* that in a first-level appeal from a criminal conviction, a state must provide appointed counsel for indigent defendants. The Supreme Court explicitly noted in *Halbert* that "*Douglas* provides the controlling instruction." 125 S.Ct. at 2590. Even though *Ross* arguably represented analogous authority with its ruling that discretionary second-level appeals do not require appointed counsel, the Supreme Court has also explained that "the mere existence of conflicting authority does not necessarily mean that a rule is new." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (quoting *Wright v. West*, 505 U.S. 277, 304 (1992) (O'Connor J., concurring)).

Moreover, the opinion in *Ross* emphasized that its holding was distinguishable from *Douglas* not because it involved discretionary appeals as opposed to appeals of right, as the state contends, but because it involved a second level of appellate review. The *Ross* Court explained that a defendant seeking leave to appeal in the North Carolina Supreme Court has already "received the benefit of counsel in examining the record of his trial and in preparing an appellate brief on his behalf for the state Court of Appeals, [and t]hus prior to his seeking discretionary review in the State Supreme Court, his claims had 'once been presented by a lawyer and passed upon by an appellate court.'" *Ross*, 417 U.S. at 614 (quoting *Douglas*, 372 U.S. at 365). Further, the *Ross* Court explained that the North Carolina Supreme Court is primarily concerned with whether cases involve matters of significant public interest or legal principles of major significance, and unlike the first-level Court of Appeals, is not primarily concerned with "whether there has been a correct adjudication of guilt in every individual case." *Id*. at 615.

The state actually points to this part of the analysis in *Ross* to argue that its holding rests on whether review is discretionary or as of right, and that *Halbert* thus created a new rule by extending *Douglas* to discretionary appeals. Appellee's Br. at 21. In fact the opposite is likely true. The relevant distinction identified by the *Ross* Court was that the North Carolina Supreme Court's discretion to grant leave to appeal turned on the importance of the subject matter of the legal issue presented, and that it was *not* used to correct errors at the trial court level. *See Ross*, 417 U.S. at 615 ("The Supreme Court [of North Carolina] may deny certiorari even though it believes that the decision of the Court of Appeals was incorrect."). It is the "error correction" role of the Michigan Court of Appeals (as opposed to the "deciding matters of public interest" role) that dictated the result in *Halbert* — not, as the state contends, whether the appeal in question was as of right or discretionary. Because the Michigan Court of Appeals acts to correct errors, even if it first exercises its discretion in deciding which potential errors to address, the result in *Halbert* is really an application of the "old rule" from *Douglas*.

The legal regime framed by *Douglas* and *Ross* thus required appointed appellate counsel at the first level of appellate review, but not at the second level. Significantly, when the *Halbert* Court examined the combined precedential value of *Douglas* and *Ross*, it followed the same distinction that the *Ross* Court did, recognizing a stronger claim for appointed appellate counsel in first-tier appellate review than in second-tier review. Under this view, it was simply a tangentially related circumstance that most first-level appeals in state courts happen to be as of right, while second-level

appeals tend to be discretionary, despite the state's current argument that this is the critical distinction. It necessarily follows that *Halbert* was dictated by *Douglas*, and therefore does not create a new rule under *Teague*.

The state also relies on the Court's statement in *Halbert* that its decision was framed by *Ross* and *Douglas* to argue that this means it "broke new ground." This argument is unconvincing. First, the simple fact that *Halbert* presented an issue that fell between two precedential cases with different results does not mean that the application of one of the prior holdings to the new situation created a new rule. Moreover, while the results in *Ross* and *Douglas* were opposite and may have formed bookends to the issue in *Halbert*, the analysis in *Ross* does nothing to refute the application of the holding in *Douglas* to first-tier appellate review. The critical distinction prior to *Halbert* — and before Simmons's guilty plea was entered — that in fact dictated the result in *Halbert* was that appointed appellate counsel is required for first-tier, but not second-tier appellate review. *Halbert* simply clarified this pre-existing distinction. Thus, although the results of *Ross* and *Douglas* may have "framed" the issue in *Halbert*, the holding of *Halbert* was virtually compelled by the analysis in both of the two prior cases, and cannot be said to represent a new rule.

Interestingly, before the Supreme Court's decision in *Halbert*, this Court addressed en banc the very same question in *Tesmer v. Granholm*, 333 F.3d 683, 701 (6th Cir. 2003) (en banc), and declared that Michigan's denial of appointed counsel for first-level applications of leave to appeal was unconstitutional:

> Michigan's statute creates unequal access even to the first part of the appellate system. Though the judge-appellants argue that any distinctions in Michigan's appellate system stem from the fact the indigent pleads guilty, or that the appeal is merely discretionary, the effect is to create a different opportunity for access to the appellate system based upon indigency. As applied, the statute violates the due process provision of the Fourteenth Amendment to the United States Constitution, and is thus unconstitutional.

That decision was later reversed by the Supreme Court, which held, without reaching the merits, that the plaintiffs did not have standing to bring suit. *Kowalski v. Tesmer*, 543 U.S. 125 (2004). Although the Supreme Court's reversal rendered this Court's decision unenforceable and without precedential value, the opinion from this Court, which followed *Douglas*, offers persuasive support for the proposition that the decision in *Halbert* was dictated by *Douglas*, and that *Halbert* therefore did not announce a new rule. At a minimum, a majority of the active judges of this Court — who, unlike the Supreme Court, lacked the authority to **extend** *Douglas* — believed that the result in *Halbert* was commanded by *Douglas*. The *Halbert* decision later confirmed this reading of *Douglas* in a case where standing was deemed appropriate. While non-binding for present purposes, our pre-*Halbert* belief that *Halbert* was dictated by *Douglas* reinforces the same reading of these cases that we outline today.

The dissent does a thorough job of analyzing the opinions of those judges who, prior to the decision in *Halbert*, argued that its eventual holding did not necessarily follow from *Douglas*. We would concede that these divergent opinions render the retroactivity question closer than it might otherwise be. Nevertheless, the Supreme Court has instructed us that the presence of dissenting opinions does not construct an absolute barrier to a determination that one of its decisions did not create a new rule under *Teague*. *See Beard*, 542 U.S. at 416 n.5; *Williams*, 529 U.S. at 410. We further believe that while these dissenting opinions are instructive, over-reliance on them can only serve to muddy the waters of the already inexact science of retroactivity analysis. The bottom line in the analysis as applied to the instant case is whether *Halbert* "simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law." *Penry*, 492 U.S. at 314. We find that this question

should be answered in the affirmative, and that when Michigan denied Simmons appointed appellate counsel, it violated his rights under *Douglas*.

We hold that the rule in *Halbert* is not a "new rule" under *Teague*, but instead merely applies the holding of *Douglas*. *Halbert* thus applies retroactively to Simmons's case, and Simmons is entitled to a writ of habeas corpus based on the state's failure to appoint him appellate counsel for his motion for leave to appeal his guilty plea. Because we are convinced that the rule from *Halbert* is not new, and therefore is unaffected by *Teague*'s retroactivity bar, we need not reach the question of whether *Halbert* falls into one of the *Teague* exceptions that allow retroactive application of a "new rule."[2] Simmons is thus entitled to a writ of habeas corpus on the ground that Michigan's refusal to appoint him appellate counsel to challenge his guilty plea was unconstitutional, as clarified in *Halbert*.

V.

Simmons also presents two independent grounds for habeas relief, arguing that his plea was not knowing and voluntary, and that he was denied the effective assistance of counsel at the plea stage under *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). We decline to reach the merits of either of these claims. The record with regard to both of these issues is relatively sparse. However as Simmons points out, the state's unconstitutional deprivation of appellate counsel likely prevented him from conducting any meaningful review or establishing a record in his collateral attack on his guilty plea in state court. *See Halbert*, 125 S.Ct. at 2593 ("Navigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson, and well beyond the competence of individuals like Halbert, who have little education, learning disabilities, and mental impairments."). It would make little sense for the federal courts to determine that Simmons was unconstitutionally deprived of appellate counsel to challenge his guilty plea in the state courts, but then to rely on the shortcomings of the state court record for him to challenge his plea, when the inadequacies of the record are likely a product of the unconstitutional deprivation of counsel. Because these claims have to be considered with the state's unconstitutional deprivation of appellate counsel in mind, Simmons should not be penalized for failing to adequately develop the state court record on these points. In light of the connection between these issues, and our decision that Simmons is entitled to a writ on his *Halbert* claim, the appropriate course is for the district court to issue the habeas writ based on the denial of appointed counsel under *Halbert*, and to allow Simmons's ineffective assistance of counsel claim and his claim that his plea was not knowing and voluntary to be raised in state court with the benefit of appointed counsel as part of the remedy for the violation of *Halbert*.

---

[2]Simmons's alternative argument that if *Halbert* was in fact a new rule, it should be deemed a watershed rule of criminal procedure (the second *Teague* exception) could potentially be meritorious. Clearly, if *Halbert* is considered to have established a new rule, it involved an extension of the right to counsel to first-tier appeals from guilty pleas. The Supreme Court has continuously emphasized that decisions involving the right to counsel are the primary example of watershed rules. *See, e.g., Beard* 542 U.S. at 417 ("[i]n providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel), and only to this rule."); *Howard v. United States*, 374 F.3d 1068, 1080 (11th Cir. 2004) (noting that despite the narrowness of the second *Teague* exception "[t]he exception that proves the exception, however, is a new Gideon-related rule" and that "[a]t the risk of oversimplification, for purposes of the second Teague exception there are new rules, and then there are new Gideon-extension rules."). Also significant is the fact that *Halbert* emphasized the accuracy and fairness that appointed counsel would add to first-tier appeals, as the second *Teague* exception is largely focused on rules that implicate the fundamental fairness and accuracy of the criminal proceeding. 125 S. Ct. 2592-93 ("A first-tier review applicant, forced to act *pro se*, will face a record unreviewed by appellate counsel, and will be equipped with no attorney's brief prepared for, or reasoned opinion by, a court of review."); *see Beard,* 542 U.S. at 417. Perhaps most convincingly, the case that was most similar to *Halbert* (and dictated the result in *Halbert*) was *Douglas*, which the Supreme Court has noted was applied retroactively. *See McConnell v. Rhay*, 393 U.S. 2, 3 (1968). Nevertheless, our consideration of this exception is unnecessary in light of our determination that *Halbert* did not create a new rule.

The state also contends that Simmons waived both his ineffective assistance of counsel claim and his claim that his plea was not knowing and voluntary by initially pleading guilty. As Simmons points out, a waiver by way of a guilty plea can only be valid "if [the] guilty plea was knowing, voluntary, and intelligent." *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). It is thus circular and unavailing to argue that by pleading guilty, a defendant waives his right to challenge the knowing and voluntary nature of the guilty plea. Similarly, because *Hill* allows challenges to guilty pleas on the basis of ineffective assistance of counsel, and every ineffective assistance of counsel claim challenging a guilty plea must necessarily be brought after entry of a guilty plea, allowing waiver through a guilty plea of a claim brought under *Hill* would render that case a nullity. We therefore reject the state's waiver arguments.

## VI.

For the foregoing reasons, this case is remanded to the district court, with instructions to grant Simmons a writ of habeas corpus for the state's failure to appoint him appellate counsel under *Halbert*. The writ should also make clear that the state courts must allow Simmons to re-argue — with the assistance of appointed counsel — his ineffective assistance of counsel claim and his claim that his plea was not knowing and voluntary.

_____

**DISSENT**

_____


REEVES, District Judge, dissenting.  The majority finds that the rule announced in *Halbert* applies retroactively to Simmons' case because it is not a "new rule" under the *Teague* analysis. Respectfully, I cannot agree with this conclusion.  Reasonable jurists differed over whether the issue presented in *Halbert* was controlled by *Douglas* or *Ross*, and *Halbert* announced a "new rule" that was not *dictated* by existing precedent.  Every panel that addressed the issue, including the United States Supreme Court, the Michigan Supreme Court, and an en banc panel of this Court, resulted in a divided decision.  Further, it cannot be said that the Michigan Supreme Court's decision to follow *Ross* was unreasonable.   Accordingly, *Halbert* announced a new rule that should not apply retroactively to Simmons' case unless it fits into one of the *Teague* exceptions.  And because the Supreme Court's "new rule" requiring that defendants receive appointed counsel in discretionary appeals from a plea-based conviction does not rise to the requisite level of implicating "fundamental fairness at trial", it does not fit into the only exception that might be applicable here.

### I.      *Halbert* announced a "new rule" that was not dictated by *Douglas*.

As the majority notes, it is not in dispute that Simmons' conviction was final at the time of the *Halbert* decision.  When a state court judgment is final,  "*Teague's* nonretroactivity principle acts as a limitation on the power of federal courts to grant 'habeas relief to . . . state prisoner[s].'" *Beard v. Banks*, 542 U.S. 406, 412 (2004) (*citing Caspari v. Bohlen*, 510 U.S. 383, 389 (1994)) (alteration in original).  According to the Supreme Court, "[t]his should make clear that the *Teague* principle protects not only the reasonable judgments of state courts but also the States' interest in finality quite apart from their courts."  *Id*. at 413.  "The 'new rule' principle therefore validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions."  *Butler v. McKellar*, 494 U.S. 407, 414 (1990).

Under *Teague*, a court must "survey the legal landscape as of that date" and determine if the rule announced "was *dictated* by then-existing precedent –  whether, that is, the unlawfulness of [the] conviction was apparent to all reasonable jurists."  *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997) (emphasis in original).  For a rule of criminal procedure to apply retroactively, the *Teague* inquiry requires more than a showing that the rule announced is the most reasonable application of prior law, rather it requires that "*no other* interpretation was reasonable."  *Lambrix*, 520 U.S. at 538 (emphasis in original).

Here, the Michigan Supreme Court's holding that a defendant was not entitled to appointed counsel in a discretionary appeal from a plea-based conviction was a reasonable interpretation of *Douglas* and *Ross* and its progeny.  The holding in *Douglas* had been consistently limited to first appeals as of right, and the Supreme Court never required the appointment of counsel for discretionary review until *Halbert*.  *Halbert v. Michigan*, 125 S. Ct. 2582, 2597 (2005) (Thomas, J. dissenting).  As this Court noted when it first addressed the issue in *Tesmer v. Granholm*, 333 F.3d 683 (6th Cir. 2003) (en banc), *rev'd*, *Kowalski v. Tesmer*, 543 U.S. 125 (2004), "the [Supreme] Court has ruled on first appeals as of right and second, discretionary appeals, but not the discretionary first appeal at issue here."  *Tesmer*, 333 F.3d at 696.  Additionally, neither *Douglas* nor *Ross* addressed the issue of appeals from plea-based convictions.  Reasonable jurists differed over whether Michigan's system was controlled by *Ross* or *Douglas*, and the holding in *Halbert* expressly addressed the question:  "With which of those decisions should the instant case be aligned?" *Halbert*, 125 S. Ct. at 2590.  Moreover, the Supreme Court's statements that the case "is properly ranked with *Douglas* rather than *Ross*" and "*Douglas* provides the controlling instruction" do not rise to the level of "dictating" the result as required by *Teague*.  *Halbert*, 125 S. Ct. at 2586,

2590; *Teague*, 489 U.S. at 301.  Thus, although the Michigan Supreme Court's decision upholding the Michigan system of appellate counsel arguably may not have been the most reasonable decision in light of the Supreme Court's holding in *Halbert*, reasonable jurists differed and the rule announced in *Halbert* should not be applied retroactively to Simmons' case.

The majority rests its finding that *Halbert* did not announce a new rule on the fact that the Michigan system involved first level appellate review and "error correction."  According to the majority, "[b]ecause the Michigan Court of Appeals acts to correct errors, even if it first exercises its discretion in deciding which potential errors to address, the result in *Halbert* is really an application of the 'old rule' from *Douglas*."  However, such reasoning oversimplifies the application of *Douglas* to the Michigan system of appeals.  Prior to its decision in *Halbert*, the Supreme Court had never extended *Douglas* to require the appointment of counsel for a discretionary appeal.  *Halbert*, 125 S. Ct. at 2597 (Thomas, J., dissenting).  When this Court first addressed the constitutionality of the Michigan system in the 2003 case of *Tesmer v. Granholm*, it noted that:

> The judge-appellants are correct in stating that the Supreme Court has never held that a constitutional right to appointed counsel exists on all first appeals.  The Court has yet to address the situation the statute presents, that of a discretionary first appeal.  In addressing the issue of the right to appointed appellate counsel, the Court has ruled on first appeals as of right and second, discretionary appeals, but not the discretionary first appeal at issue here.  We are left to fill in this gap.

*Tesmer*, 333 F.3d at 696.  The dichotomy of the relevant Supreme Court precedents is further explained by Justice Thomas in his dissent in *Halbert*, which states that:

> Michigan's system bears some similarity to the state systems at issue in both *Douglas* and *Ross*.  Like the defendant in *Douglas*, Halbert requests appointed counsel for an initial appeal before an intermediate appellate court.  But like the defendant in *Ross*, Halbert requests appointed counsel for an appeal that is discretionary, not as of right. Crucially, however, *Douglas* noted that its decision extended only to initial appeals as of right--and later cases have repeatedly reaffirmed that understanding.  This Court has never required States to appoint counsel for discretionary review.

*Halbert*, 125 S.Ct. at 2597 (Thomas, J., dissenting).[1]

Significantly, the Michigan system not only presented the novel issue of a first level discretionary appeal, but also only applied to plea-based convictions.  Under the Michigan constitution, a defendant who pleas guilty or nolo contendere "relinquishes access to an appeal as

---

[1]In his dissent, Justice Thomas cited a number of cases holding that *Douglas* applied only to appeals as of right:

*Douglas*, 372 U.S., at 357, 9 L. Ed. 2d 811, 83 S. Ct. 814; *Ross*, 417 U.S., at 608, 41 L. Ed. 2d 341, 94 S. Ct. 2437 ("[*Douglas*] extended only to initial appeals as of right"); *Evitts v. Lucey*, 469 U.S. 387, 394, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985) (*Douglas* "is limited to the first appeal as of right"); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further"); *Coleman v. Thompson, 501 U.S. 722, 755, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991)* ("[*Douglas*] establish[es] that an indigent criminal defendant has a right to appointed counsel in his first appeal as of right in state court"); see also *Wainwright v. Torna, 455 U.S. 586, 587, 71 L. Ed. 2d 475, 102 S. Ct. 1300 (1982) (per curiam)* ("[*Ross*] held that a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in this Court").

*Halbert*, 125 S. Ct. at 2597 n.1 (Thomas, J., dissenting).

of right," and must file an application for leave to appeal, regardless of whether the defendant can afford counsel. *Halbert*, 125 S. Ct. at 2590; Mich. Const. art. 1 § 20. If the court of appeals grants review, or any other statutory exceptions apply, Michigan law requires the appointment of appellate counsel. Mich. Comp. Laws Ann. § 770.3a. Otherwise, a defendant appealing from a plea-based conviction was not entitled to appointed counsel in his application for leave to appeal. *Id*.

In applying *Douglas*, *Ross*, and the cases that followed, this Court in *Tesmer* noted that "[w]e cannot read into this discussion any mandate from the [Supreme] Court for states to provide appellate counsel in every instance. What we can take from the discussion is that appellate processes must be fair and may not be implemented in a manner that discriminates based on indigency." *Tesmer*, 333 F.3d at 700. In *Ross*, the Supreme Court held that a state does not have to provide an appeal at all, but when it does, it must do so in a non-discriminatory manner. That is, defendants must be afforded "meaningful access to the appellate system." *Ross v. Moffitt*, 417 U.S. 600, 611 (1974). Following this rationale, the Michigan Supreme Court reasonably found that "[g]iven the obvious differences between trial-based and guilty plea convictions, it is clear that our current guilty plea procedures provide sufficient methods of assistance to meet the *Ross* meaningful access requirement." *People v. Bulger*, 462 Mich. 495, 518 (Mich. 2000). The state supreme court reasoned that guilty pleas were sufficiently different from convictions after trials because of (1) the state's interest in finality, (2) the "shorter, simpler, and more routine" nature of the plea proceedings which lead to a clear trial record from which the appellate court can decide whether to permit review, and (3) the limitation on issues for review when a defendant pleas guilty. *Bulger*, 462 Mich. at 516-17. The dissent in *Halbert* agreed with the Michigan Supreme Court's reasonable interpretation of constitutional requirements and precedent and found that *Douglas* "does not support extending the right to counsel to any form of discretionary review, as *Ross v. Moffit, 417 U.S. 600, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974)*, and later cases maker clear." *Halbert*, 125 S. Ct. at 2596 (Thomas, J., dissenting). According to Justice Thomas, "Michigan has done no more than recognize the undeniable difference between defendants who plead guilty and those who maintain their innocence, in an attempt to divert resources from largely frivolous appeals to more meritorious ones." *Id*.

The majority also points to the Supreme Court's statement in *Halbert* that "*Douglas* provides the controlling instruction" in support of its holding that *Halbert* did not announce a new rule. *Halbert*, 125 S. Ct. at 2590. Contrary to this contention, the Supreme Court has held that such statements do not indicate that the state court acted unreasonably:

> But the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*. Courts frequently view their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts.

*Butler*, 494 U.S. at 415. The language used by the Supreme Court, such as "controlling instruction," "classification question," and "Halbert's case is properly ranked with *Douglas* rather than *Ross*" does not rise to the level of *dictating* the result as required by *Teague*. The Michigan Supreme Court reached a "reasonable contrary conclusion" regarding the application of *Douglas* and *Ross* to the Michigan system, and the holding in *Halbert* should be considered a new rule for purposes of the *Teague* retroactivity analysis.

Moreover, although the Supreme Court has stated that the "mere existence of a dissent" is not sufficient to show that a rule is new "[b]ecause the focus of the inquiry is whether *reasonable* jurists could differ as to whether precedent compels the sought-for rule," the Court has relied on dissents in its own decisions for that very premise. *Beard v. Banks*, 542 U.S. 406, 416 n.5 (2004)

(emphasis in original). In *Beard*, the Supreme Court addressed the retroactive application of a rule of criminal procedure under circumstances similar to the present case.[2] *Id*. at 410. The Court had based its "new rule" on a line of cases similar, but not exactly identical, to the one before the court. *Id*. Thereafter, the Third Circuit held that the rule applied retroactively and was not barred by *Teague*, and the Supreme Court reversed. *Id*. The Supreme Court held that the essential, determining factor was that the prior cases did not *mandate* the result. *Id*. at 414. ("The generalized *Lockett* rule (that the sentencer must be allowed to consider any mitigating evidence) could be thought to support the Court's conclusion in *Mills* and *McKoy*. But what is essential here is that it does not mandate the *Mills* rule."). The Court found that there was a distinguishing factor in the precedential line of cases that was not present in the case announcing the new rule. *Id*. The Court further relied on the dissent in the case announcing the new rule to show that "there is no need to guess" if reasonable jurists could differ as to whether the precedent compelled the result. *Beard*, 542 U.S. at 415.

The present case can be substantially analogized to the Supreme Court's reasoning in *Beard*. In *Halbert*, the Court based its decision on the *Douglas* line of cases, but *Douglas* did not mandate the result. Although some of the factors articulated by the Court in *Douglas* influenced the result in *Halbert* (that is, that the discretionary appeal involved some level of adjudication on the merits and that a defendant seeking leave to appeal is "generally ill equipped to represent themselves" under the Michigan system), *Halbert* introduced two new factors that were not even considered in *Douglas*. *Halbert*, 125 S. Ct. at 2591. First, the Michigan system only applied to defendants appealing from a plea-based conviction. Second, it did not afford such defendants an appeal of right. While the holding in Douglas was limited to requiring appointed counsel on initial appeals as of right, the Court in *Halbert* "h[e]ld that the *Due Process* and *Equal Protection Clauses* require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." *Halbert*, 125 S. Ct. at 2586. As the Supreme Court's explicit holding makes clear, *Halbert* addressed factors that were clearly distinguishable from *Douglas*, and reasonable jurists could and did differ concerning whether *Douglas* compelled the result in *Halbert*.

Finally, as in *Beard*, "there is no need to guess" whether reasonable jurists could differ as to whether *Douglas* compelled the result in *Halbert*, as three justices agreed with the Michigan Supreme Court and found that Michigan's system for appellate counsel was constitutional under *Douglas* and *Ross*. *Halbert*, 125 S. Ct. at 2595 (Thomas, J., dissenting).[3] Justice Thomas' dissenting opinion follows much of the same analysis as the Michigan Supreme Court and disputes the majority's findings that the discretionary review system is an adjudication on the merits and that a defendant is not sufficiently equipped to apply for leave to appeal. Justice Thomas repeatedly states that "the rationale of Douglas does not support extending the right to counsel to this particular form of discretionary review." *Id*. at 2597. The dissent also disagrees with the majority's finding that the Michigan Court of Appeals adjudicates on the merits, as "the Court of Appeals' decision to grant review remains 'discretionary,' because it does not depend on 'whether there has been a correct adjudication of guilt in every individual case.' Like other courts of discretionary review, the

---

[2] In *Beard*, the Supreme Court held that the rule announced in *Mills v. Maryland*, 486 U.S. 367 (1988) was not mandated by the Court's decision in *Lockett v. Ohio*, 438 U.S. 586 (1978), even though the Court relied on *Lockett* and its progeny in deciding *Mills*. The Court found that the *Lockett* rule stands for the proposition "that the sentencer must be allowed to consider any mitigating evidence." *Beard*, 542 U.S. at 414. In *Mills*, the Court "held invalid capital sentencing schemes that require juries to disregard mitigating factors not found unanimously." *Id*. at 408. The Court in *Beard* found that while the *Lockett* line of cases focused on the "sentencer's ability to consider mitigating evidence," the "*Mills*' innovation rests with its shift to focus on individual jurors." *Id*. at 414.

[3] Justice Scalia and Chief Justice Rehnquist joined in Justice Thomas' dissent. However, the Chief Justice did not join with respect to Part III-B-3 which addressed the issue of the plea colloquy and Halbert's waiver of his right to appeal.

Court of Appeals may opt to correct errors, but it is not compelled to do so." *Id*. at 2599 (citations omitted).

As noted previously, every panel that addressed the issue presented in *Halbert* was unable to reach a unanimous decision. The Supreme Court's decision in *Halbert* was 6-3, with Justices Thomas, Scalia, and Chief Justice Rhenquist dissenting. *Halbert*, 125 S.Ct. at 2582. The Sixth Circuit had previously addressed the issue en banc in 2003 in *Tesmer v. Granholm*, and reached a 7-4 decision, finding the Michigan system unconstitutional under *Douglas*. *Tesmer*, 333 F.3d 683.[4] Even the Michigan Supreme Court was divided in *People v. Bulger*, in which it affirmed the constitutionality of the Michigan system in a 4-2 decision, with one justice not participating. *Bulger*, 462 Mich. at 495.

The retroactivity test articulated by the Court in *Teague* is not determined by the fact that the Supreme Court applied existing case law in reaching its decision, but rather asks if reasonable jurists could differ as to whether the prior law *compelled* the result in the current decision. *Beard*, 542 U.S. at 414. The State convincingly argues that the Court's decision in *Halbert* was framed by two Supreme Court decisions and that reasonable jurists could and did differ as to which classification the Michigan system of appeals belonged. For a rule of criminal procedure to be considered something other than a new rule under *Teague*, "no other reasonable interpretations" of then-existing law can exist. Two cases reasonably governed the result of the *Halbert* decision, and the rule announced in *Halbert* should be considered a "new rule" under *Teague*.

## II.    The right to counsel in a discretionary appeal from a plea-based conviction does not fall under *Teague's* second exception for "watershed rules of criminal procedure."

Because the majority finds that *Halbert* did not announce a new rule, it does not reach the second *Teague* inquiry as to whether the rule announced falls under one of the two *Teague* exceptions.[5] The parties agree that the first exception is not relevant in the present case. However, the Petitioner contends that rule announced in *Halbert* fits into the second exception, which is reserved for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (*citing Teague*, 489 U.S. at 311). As the Supreme Court noted in *Teague*, this exception is to be construed narrowly "[b]ecause we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313. "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" *Graham v. Collins*, 506 U.S. 461, 478 (1993) (*citing Teague*, 489 U.S. at 311).

The Supreme Court has never retroactively applied a new rule of criminal procedure under the watershed rule exception post-*Teague*. *Beard*, 542 U.S. at 417. In its most recent case addressing the possible retroactive application of a new rule, the Court held that even "the fact that

---

[4] Judges Martin, Boggs, Daughtrey, Moore, Cole, Clay and Gilman formed the majority. Judges Rogers, Siler, Batchelder, and Gibbons concurred in part and dissented on standing grounds. Judges Norris, Siler, Batchelder, and Gibbons dissented as to the majority's holding that the Michigan system was unconstitutional. The Supreme Court reversed the decision on third party standing grounds and declined to reach the "classification question." *Kowalski*, 543 U.S. 125; *Halbert*, 125 S. Ct. at 2586.

[5] The majority, however, indicates in footnote 2 of its opinion that "Simmons's alternative argument that if *Halbert* was in fact a new rule, it should be deemed a watershed rule of criminal procedure (the second *Teague* exception) could potentially be meritorious." In short, the majority reasons that the "new rule" should be applied retroactively because *Halbert* involved an extension of the right to counsel on the basis of accuracy and fairness.

a new rule removes some remote possibility of arbitrary infliction of the death sentence does not suffice to bring it within *Teague*'s second exception." *Id*. at 419-20. The Court looked to the fact that the rule in question "applies fairly narrowly and works no fundamental shift in 'our understanding of the *bedrock procedural elements*' essential to fundamental fairness." *Id*. (emphasis in original). The Court also noted that "because any qualifying rule 'would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge,' it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Id*. at 417 (citations omitted) (alteration in original).

The right to counsel in an application for leave to appeal a plea-based conviction does not fit into this narrowly drawn exception for "watershed rules of criminal procedure" or "bedrock procedural elements." The right to counsel has historically been applied retroactively, such as in *Daegele v. Kansas*, 375 U.S. 1 (1963), which retroactively applied *Douglas*, and *Aresenault v. Massachusetts*, 393 U.S. 5 (1968), which retroactively applied *White v. Maryland*, 373 U.S. 59 (1963) (establishing the right to counsel in plea hearings), but these cases were decided prior to the Supreme Court's establishment of the *Teague* test for retroactive application of new rules on collateral review. As the Eleventh Circuit noted recently, "[b]ecause of the substantial difference in analysis, the pre-Teague decisions applying Gideon-related rights retroactively do not control whether a post-Teague decision announcing a new one is retroactively applicable." *Howard v. United States*, 374 F.3d 1068, 1078 (11th Cir. 2004).

The Petitioner accurately points out that the Supreme Court has repeatedly identified *Gideon v. Wainwright*, 372 U.S. 335 (1963), which "established an affirmative right to counsel in all felony cases" as the example of a "watershed rule of criminal procedure." *Beard*, 542 U.S. at 418. However, the Petitioner[6] misrepresents the Court's use of *Gideon* as an example to include all cases involving the right to counsel. (Petr.'s Br. at 21) In contrast, the Court has stated that *Gideon* is the prime example because of its "sweeping nature" and the "primacy and centrality of the rule adopted." *Id*.; *Saffle*, 494 U.S. at 495. Accordingly, the Court has "not hesitated to hold that less sweeping and fundamental rules do not fall within *Teague's* second exception." *Beard*, 542 U.S. at 418.

For a "new rule" to fit within this exception, failure to apply it retroactively must "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Teague*, 489 U.S. at 315. Although the Supreme Court has repeatedly affirmed that the right to counsel at all felony trials is exactly the kind of "watershed rule" that this exception is designed to address, that rule is significantly broader and more fundamental that the narrow rule announced in *Halbert*. In *Halbert*, the Supreme Court held "that the *Due Process* and *Equal Protection Clauses* require the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." *Halbert*, 125 S. Ct. at 2586. According to the Petitioner "to the extent that this constitutes a new rule (notwithstanding *Douglas*), it constitutes an extension of the right to counsel, and it must be applied retroactively." (Petr's Br. at 23)

---

[6] The majority also makes this representation in Footnote 2 of its opinion. However, all the Supreme Court cases cited by the majority and the Petitioner specifically identify *Gideon v. Wainwright*, and not the overall right to counsel as the "paradigm" example of a watershed rule. *See e.g.*, *Beard*, 542 U.S. at 417 ("In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)* (right to counsel), and only this rule."); *Saffle*, 494 U.S. at 495 ("Although the precise contours of this exception may be difficult to discern, we have usually cited *Gideon v. Wainwright, 372 U.S. 335 (1963)*, holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception.").

The Petitioner's argument is not supported by the Supreme Court's analysis post-*Teague*. The rule announced in *Halbert* is unlikely to apply to any situation other than the particular system of appeals from plea-based convictions established by the Michigan legislature. It does not represent a shift in "bedrock procedural elements" and it cannot be said to be "on par" with *Gideon*. *See Beard,* 542 U.S. at 418. The purpose of the "watershed rules of criminal procedure" exception to the general rule prohibiting retroactive application of new rules of criminal procedure on collateral review is to provide for accuracy in convictions and the "fundamental fairness of the trial." *Teague*, 489 U.S. at 312. The scope of that exception is limited "to those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id*. at 313. In *Ross*, the Court stated that,

> [t]he fact that an appeal *has* been provided does not automatically mean that a State then acts unfairly by refusing to provide counsel to indigent defendants at every stage of the way. *Douglas v. California, supra*. Unfairness results only if indigents are singled out by the State and denied meaningful access to the appellate system because of their poverty.

*Ross*, 417 U.S. at 611 (emphasis in original).

Moreover, the denial of the right to counsel in an appeal does not rise to the level of providing "fundamental fairness at trial" because, as the Supreme Court stated in *Goeke v. Branch*, 514 U.S. 115, 120 (1995), "due process does not require a State to provide appellate process at all." *Goeke*, 514 U.S. at 120 (holding that the Eighth Circuit's ruling that "it is a violation of Fourteenth Amendment due process for a state appellate court to dismiss the appeal of a recaptured fugitive where there is no demonstrated adverse effect on the appellate process" did not apply retroactively under the second *Teague* exception). In *Goeke*, the Court held that "[b]ecause due process does not require a State to provide appellate process at all, a former fugitive's right to appeal cannot be said to 'be so central to an accurate determination of innocence or guilt,' as to fall within this exception to the *Teague* bar." *Id*. (citations omitted).

Additionally, the *Gideon* rule establishing the right to counsel *at all felony trials* is significantly different from the instant rule establishing the right to counsel *in a discretionary appeal from a plea-based conviction*. The Supreme Court has stated that a "defendant needs an attorney on appeal not as a shield to protect him against being 'haled into court' by the State and stripped of his presumption of his innocence, but rather as a sword to upset the prior determination of guilt." *Ross*, 417 U.S. at 610-11. As Justice Thomas noted in his dissent in *Halbert*, "because a defendant who pleads guilty 'may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea,' the potential issues that can be raised on appeal are more limited." *Halbert*, 125 S.Ct. at 2598 (Thomas, J. dissenting) (citations omitted). Similarly, the Michigan Supreme Court reasoned that,

> [p]lea proceedings are also shorter, simpler, and more routine than trials; the record most often consists of the 'factual basis' for the plea that is provided to the trial court. In contrast with trials, less danger exists in plea cases that the record will be so unclear, or the errors so hidden, that the defendant's appeal will be reduced to a meaningless ritual.

*Bulger*, 462 Mich. at 517. Accordingly, the Supreme Court's "new rule" requiring that defendants receive appointed counsel in discretionary appeals from plea-based conviction does not rise to the requisite level of implicating the "fundamental fairness at trial" and, therefore, does not fit into *Teague*'s exception for watershed rules of criminal procedure. *Teague*, 489 U.S. at 312.

Because the rule announced in *Halbert* narrowly applies to discretionary appeals from plea-based convictions, and because due process does not require that a state provide an appeal at all, *Teague*'s retroactivity analysis prohibits the application of *Halbert*'s holding on collateral review.

## III.    Conclusion

The Supreme Court announced a new rule in *Halbert*, that the Due Process and Equal Protection Clauses require the appointment of counsel for defendants seeking leave to appeal from a plea-based conviction under the Michigan system. This rule does not fit into the narrowly-drawn *Teague* exception for "watershed rules of criminal procedure" and "bedrock procedural elements" and, thus, should not apply retroactively to Simmons' case. Therefore, I respectfully dissent from the majority's finding that *Halbert* affords Simmons relief on collateral review.